PEOPLE v TURNER

1. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE—GUILT OF PRINCIPAL—REASONABLE DOUBT.

Though he need not have been convicted, the guilt of the principal must be shown to sustain a charge of aiding and abetting and the evidence must show beyond a reasonable doubt that the defendant's activity constituted aiding and abetting the crime.

2. CRIMINAL LAW—AIDING AND ABETTING—PRINCIPAL—SPECIFIC INTENT.

An aider and abettor cannot be held as a principal under a criminal statute unless he had the specific intent to commit the crime proscribed by the statute or he aided and abetted in the perpetration knowing that the actual perpetrator had such intent.

3. EVIDENCE—WRITINGS—WITNESSES—TESTIMONY—FOUNDATION—PRESENT MEMORY.

If after examining a writing, a witness has no present memory of the transaction described therein but states that the memorandum accurately describes the transaction, the writing itself becomes the testimony and a specific foundation must be laid before it may be read into evidence.

4. EVIDENCE—WRITINGS—SPECIFIC FOUNDATION—ELEMENTS.

The specific foundation which must be laid before a memo which contained a statement that a witness had made but had refused to sign may be read into evidence by a police officer to impeach the testimony of the witness consists of: (a) a showing that the officer has no present recollection of the facts, (b) a showing that the officer's memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the officer from personal observation,

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 120 *et seq.*
[3, 4] 29 Am Jur 2d, Evidence § 598.
[5, 6] 75 Am Jur 2d, Trial §§ 906, 907.
[7] 21 Am Jur 2d, Criminal Law §§ 185, 494.

(d) a showing that the document was prepared by the officer contemporaneously with the event and was an accurate recording of the occurrence, and (e) a showing that the substance of the proferred writing is otherwise admissible.

5. APPEAL AND ERROR—PRESERVING QUESTION—INSTRUCTIONS TO JURY —FAILURE TO OBJECT—MANIFEST INJUSTICE.

The Court of Appeals will consider claims of error in the absence of a timely objection at trial to the instructions to the jury only where manifest injustice has occurred.

6. APPEAL AND ERROR—INSTRUCTIONS TO JURY—PRESERVING QUESTION —PRIOR INCONSISTENT STATEMENTS—IMPEACHMENT—MANIFEST INJUSTICE—FAILURE TO OBJECT.

Failure of a court to instruct the jury that testimony of a police officer concerning prior inconsistent statements made by the accused should be considered only for impeachment purpose and not as substantive evidence is not *per se* reversible error where no manifest injustice has resulted and no objection was made at trial.

7. APPEAL AND ERROR—PRESERVING QUESTION—INSTRUCTIONS TO JURY —LESSER INCLUDED OFFENSES—FAILURE TO OBJECT—AFFIRMATIVE EXCLUSION—VERDICTS.

Failure of the trial court to instruct the jury on lesser included offenses requires reversal in the absence of ʼobjection only where the court has affirmatively excluded lesser included offenses from the consideration of the jury.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 February 10, 1975, at Detroit. (Docket No. 20558.) Decided March 13, 1975.

Larry Turner was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, for the people.

*George C. Dovas,* for defendant on appeal.

Before: D. E. Holbrook, P. J., and Danhof and
N. J. Kaufman, JJ.

N. J. Kaufman, J. Defendant was found guilty
of armed robbery, MCLA 750.529; MSA 28.797,
after a jury trial in Detroit Recorder's Court. He
was sentenced to a term of 5 to 15 years and now
appeals.

At trial, the complainant, Larry Means, testified
that, on the night he was robbed, he had gone with
defendant to a bar where they met a mutual
friend, Augustas Murphy. The three men drank
together and, when Means went to the men's
room, Murphy left the bar. Means stated that, as
he and the defendant were walking home, defend-
ant suggested that they stop at a nearby apart-
ment building to visit defendant's sister. When the
two men got into the elevator, defendant pushed
the button for the seventh floor. Testimony later
showed that defendant's sister did not live on the
seventh floor. According to Means, when the eleva-
tor door opened on the seventh floor, Augustas
Murphy, whose head was covered with a clear
plastic bag, rushed into the elevator and accosted
Means with a butcher knife. Means claimed that
Murphy instructed the defendant, by name, to go
through Means' pockets and take his money. De-
fendant did so and also took Means' watch and
gave it to Murphy. Murphy got off on the ninth
floor. Defendant rode back down with Means
where, according to Means, he threatened to "get
him" if he pressed charges. Means claimed that,
after defendant's arrest, Murphy gave him back
his watch. Murphy was never arrested.

Defendant testified that he and Means had gone
to visit defendant's sister at an address different
than that given by Means. He claimed that before
they got onto the elevator the two were accosted

by an unfamiliar man wielding a knife. He claimed that he was asked by Means to reach into his pocket and give Means' money to the robber and that the robber had taken Means' watch. Defendant denied threatening Means.

I.

On appeal, defendant raises four claims of error. First, he contends that the evidence presented at trial was insufficient to support the verdict. Although defendant was charged with armed robbery, MCLA 750.529; MSA 28.797, the trial judge instructed the jury, and defendant was convicted, under the aiding and abetting statute, MCLA 767.39; MSA 28.979. That statute provides:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

To sustain a charge of aiding and abetting, the guilt of the principal must be established. *People v Williams #1,* 45 Mich App 623; 207 NW2d 176 (1973). The evidence must have been sufficient to show beyond a reasonable doubt that the defendant's activity constituted aiding and abetting the crime. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974), *People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972). Defendant does not question whether the evidence was sufficient to show that the man whom the complainant identified as Augustas Murphy committed an armed robbery. Rather, defendant states that, because armed rob-

bery is a specific intent crime, *People v Kelley,* 21
Mich App 612; 176 NW2d 435 (1970), *lv den,* 383
Mich 792 (1970), an aider and abettor cannot be
held as a principal under the statute unless he
was of such intent or he aided or abetted in the
perpetration such that he knew that the actual
perpetrator had the requisite intent. *People v
Poplar,* 20 Mich App 132; 173 NW2d 732 (1969).
Defendant argues that the evidence was insuffi-
cient to establish that he had such intent.

We disagree. The record contains sufficient evi-
dence, if believed by the jury, to demonstrate a
commonality of intent between defendant and the
principal perpetrator. The complainant described a
scheme by defendant and Murphy to "set him up"
for a robbery. Murphy left the bar while defendant
was absent. Defendant suggested that he and com-
plainant visit defendant's sister, who lived on the
eleventh floor, but defendant pushed the seventh
floor button. Murphy was waiting on the seventh
floor, and in the course of the robbery referred to
defendant by name.

## II.

Defendant's second claim of error is that the
court erroneously allowed one of the arresting
officers to testify to prior inconsistent statements
allegedly made by defendant while in custody.
After defendant had testified that the robber had
used a knife and that the robbery occurred before
he and Means got on the elevator, the prosecution
called one of the arresting officers, Officer Mc-
Grath, as an impeachment witness. McGrath testi-
fied that, after his arrest, defendant claimed that
the robber had used a gun and that the robbery

occurred on the elevator.[1] Before he testified, the officer had stated that he had no independent recollection of the conversation. He was then allowed to refer to notes which he had made at the time of defendant's statement and which he identified as being in his (McGrath's) handwriting. Defendant contends that the Supreme Court case of *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972), requires reversal. Further, defendant argues that the memorandum should not have been read into evidence since the officer never fully authenticated it. *People v Rosborough,* 387 Mich 183; 195 NW2d 255 (1972). Plaintiff responds that *Rodgers* is not in point and that authentication was not required because the officer's notes were used to refresh his recollection, not themselves offered into evidence.

We agree with plaintiff that *People v Rodgers, supra,* does not control this issue. In *Rodgers,* a police officer, called to impeach the prior testimony of an alibi witness, read into evidence a memo which contained a statement that the witness had made but had refused to sign. The Supreme Court found the *statement inadmissible as hearsay* because its contents were not used for impeachment but as substantive evidence. In the instant case, Officer McGrath's testimony was elicited solely to impeach defendant's testimony by prior inconsistent statements.

What must be determined here is whether Officer McGrath used his notes to refresh his recollection or whether the notes represented a record of his past recollection, and he testified by merely reading them into evidence. Where a witness testi-

---

[1] Defendant makes no claim that the statement allegedly made to Officer McGrath was involuntarily made or made without defendant's *"Miranda* rights" having been explained to him. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

fies from memory, with his recollection having been stirred by a writing, his testimony is what he relates, not the writing. *People v Thomas,* 359 Mich 251; 102 NW2d 475 (1960), 3 Wigmore, Evidence § 735, p 78. Opposing counsel must be allowed to examine the writing, *Miles v Clairmont Transfer Co,* 35 Mich App 319; 192 NW2d 619 (1971). If after examining the writing, the witness still has no present memory of the transaction described but does believe that the memorandum accurately describes the transaction, the writing itself becomes the testimony. The witness is merely reading from the prior recorded recollection. At that point, a specific foundation must be laid before the writing may be read into evidence. The foundation consists of:

"(a) a showing that the witness has no present recollection of the facts, (b) a showing that the witness' memory is not refreshed upon reference to the document, (c) a showing that the document is an original memorandum made by the witness from personal observation, (d) a showing that the document was prepared by the witness contemporaneously with the event and was an accurate recording of the occurrence and, (e) a showing that the substance of the proffered writing is otherwise admissible." *Jaxon v City of Detroit, Department of Street Railways,* 379 Mich 405, 413; 151 NW2d 813, 816 (1967).

An examination of the record does not tell us how the notes were used. However, we find that, in either case, the correct procedures were followed. Although treated as present recollection refreshed, the testimony satisfied the foundation requirements for past recollection recorded. Officer McGrath authenticated his notes, *People v Rosborough, supra.* He testified that he made them while defendant was speaking to him and that they were

an accurate summary of defendant's statement. Further, the testimony was clearly introduced as impeachment, not substantive evidence. Thus, if the officer had no present recollection, and his memory was not refreshed, and if he was merely reading from his notes, he did so properly.

## III.

Defendant's final two claims of error both involve allegations that the trial court committed error in not giving certain instructions. In both cases, defendant failed to object or offer an instruction. To preserve a claim of error for appeal, a party must interpose a timely objection at trial, GCR 1963, 516.2. Absent such objection, this Court will consider claims of error only where manifest injustice has occurred, *People v McClure,* 29 Mich App 361; 185 NW2d 426 (1971), *lv den,* 385 Mich 761 (1971).[2] Defendant argues that error occurred when the court failed to instruct the jury that Officer McGrath's testimony would be considered only for impeachment purposes and not as substantive evidence. This failure is not *per se* reversible, *People v Coates,* 40 Mich App 212; 198 NW2d 837 (1972). No manifest injustice resulted. Indeed, the trial court carefully cautioned the jury concerning Officer McGrath's testimony. The judge stressed that Officer McGrath's testimony. The judge stressed that Officer McGrath "had no independent recollection of his conversation with the

---

[2] "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCLA 769.26; MSA 28.1096.

defendant, but only a vague recollection of the continence of the defendant". He also stated that the notes were not themselves admissible, although, as we noted above, if the officer read the notes into evidence, he did so properly. Defendant did not object to this instruction.

Defendant, citing *People v Lemmons,* 384 Mich 1; 178 NW2d 496 (1970), also argues that the court should have *sua sponte* instructed the jury on lesser included offenses.[3] *Lemmons* requires reversal in the absence of objection, only when the court "affirmatively excluded [lesser included offenses] from the consideration of the jury". *Id.* at 3; 178 NW2d at 497, *People v Lindsey,* 56 Mich App 458; 224 NW2d 273 (1974).

The trial court instructed: "You have only two possible verdicts. They are guilty or not guilty". This Court has approved this instruction on at least two occasions, *People v Goldfarb,* 37 Mich App 57; 194 NW2d 535 (1971), *lv den,* 386 Mich 787 (1972), and *People v Roshinsky,* 37 Mich App 754; 195 NW2d 282 (1972), *lv den,* 388 Mich 761 (1972). We approve it here, but not without the same reservations as those succinctly stated by Chief Judge LESINSKI, concurring in *Roshinsky, supra.* A clarification of the *Lemmons* doctrine is clearly required.

Affirmed.

---

[3] Unfortunately, defendant's appellate counsel does not indicate on what lesser included offenses the jury should have been instructed. Appellate counsel for defendant has, on his other issues, failed to do much more than state conclusions and cite a few cases without any real discussion of those cases or of the issues involved.