PEOPLE v WALTER JOHNSON

PEOPLE v EDGAR JOHNSON

Docket Nos. 77-2389, 77-2398, 77-2309, 77-2397. Submitted June 15, 1978, at Detroit.—Decided September 20, 1978. Leave to appeal applied for.

Walter Johnson and Edgar Johnson were each convicted, on their pleas of guilty, of armed robbery and possession of a firearm in the commission of a felony, in each of two separate robberies, in Detroit Recorder's Court, Samuel H. Olson, J. Both defendants appeal, alleging several errors. The appeals were consolidated for hearing and decision. *Held:*

1. The plea-taking procedure was not erroneous. Each defendant stated that he understood all of his rights and wished to plead guilty.

2. There was sufficient factual basis for acceptance of the guilty pleas, except for Walter Johnson's conviction on the felony-firearm count. The felony-firearm statute requires that a defendant personally carry or have in his possession a firearm in order to be found guilty under the statute. There is no indication that Walter Johnson was armed at the time of the robberies.

3. The felony-firearm statute is an act complete within itself, and does not violate the constitutional prohibition against revising, altering or amending a law by reference to its title only.

4. The felony-firearm statute is a sentence-augmenting stat-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 115 *et seq.*

67 Am Jur 2d, Robbery § 9.

79 Am Jur 2d, Weapons and Firearms § 7 *et seq.*

[2] 73 Am Jur 2d, Statutes §§ 137–141.

[3] 21 Am Jur 2d, Criminal Law §§ 185–187, 189.

[4] [No reference]

[5] 79 Am Jur 2d, Weapons and Firearms § 24.

[6] 21 Am Jur 2d, Criminal Law §§ 538, 570.

[7] 21 Am Jur 2d, Criminal Law §§ 182, 183, 188.

[8] 21 Am Jur 2d, Criminal Law § 115 *et seq.*

67 Am Jur 2d, Robbery §§ 8, 9.

ute, which was intended by the Legislature to require a specific additional penalty where a firearm is carried or possessed at the time of committing or attempting to commit a felony. A conviction under the statute does not involve double jeopardy, double sentence, or double punishment.

Affirmed, but Walter Johnson's convictions on the felony-firearm charges are reversed.

N. J. KAUFMAN, P. J., dissents on the ground that under the language of the informations it would be impossible to prove one charge, either the armed robbery or the carrying or possession of a firearm in the commission of a felony, without the identical facts necessary to prove the other charge. Therefore, the defendants were twice convicted and punished for the same offense. Judge KAUFMAN also would hold that Walter Johnson could be convicted on the felony-firearm charges as an accessory, were it not for the invalidity of the convictions because of double jeopardy.

### OPINION OF THE COURT

1. CRIMINAL LAW—STATUTES—FELONY-FIREARM—PERSONAL LIABILITY —AIDERS AND ABETTORS.

The felony-firearm statute, which makes carrying a firearm during the commission of a felony not excepted by the statute a separate punishable offense, requires for a finding of guilt that a defendant personally carry or have in his possession a firearm; an aider and abettor in an armed robbery, who was not armed, may not be convicted of violation of the felony-firearm statute (MCL 750.227b; MSA 28.424[2]).

2. CONSTITUTIONAL LAW—CRIMINAL LAW—STATUTES—FELONY-FIRE- ARM—TITLE-OBJECT CLAUSE.

The felony-firearm statute is an act complete within itself, and as such it does not violate the constitutional proscription against revision of a statute by reference to its title only (Const 1963, art 4, § 25, MCL 750.227b; MSA 28.424[2]).

3. CRIMINAL LAW—SINGLE ACT—MULTIPLE CHARGES—LEGISLATIVE IN- TENT.

A single act may give rise to charges under more than one criminal statute where there is a clear legislative intent to do so; but where one of two offenses charged is a necessarily included offense of the other, recent case law appears to hold that convictions for both offenses are precluded.

4. CRIMINAL LAW—STATUTES—FELONY-FIREARM—SENTENCING—IN-
TENT OF LEGISLATURE.

The intent of the Legislature in enacting the felony-firearm
statute was to provide an additional, mandatory prison sen-
tence where a firearm was carried or possessed in the commis-
sion of a felony; the statute is a sentence-augmenting statute
and as such is not within or subject to the greater offense-lesser
included offense dichotomy (MCL 750.227b; MSA 28.424[2]).

5. CRIMINAL LAW—CONSTITUTIONAL LAW—FELONY-FIREARM—DOUBLE
JEOPARDY.

A defendant who is found to have committed a felony and then
found to have carried or had in his possession a firearm during
the commission of that felony is not thereby subjected to double
jeopardy, to double sentence, or to double punishment (MCL
750.227b; MSA 28.424[2]).

6. CRIMINAL LAW—STATUTES—FELONY-FIREARM—ORIGINAL CHARGE.

The felony-firearm statute may be used to augment a defendant's
sentence only if violation of that statute is included as part of
the original charge dealing with the underlying felony (MCL
750.227b; MSA 28.424[2]).

DISSENT BY N. J. KAUFMAN, P. J.

7. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—ARMED
ROBBERY—FELONY-FIREARM.

*A defendant was twice convicted and punished for the same
offense in violation of the constitutional guarantees against
double jeopardy where he was charged with armed robbery and
violation of the felony-firearm statute and where the language
of the information reads in such language that it would be
impossible to prove one of the charges without the identical
facts necessary to prove the other charge.*

8. CRIMINAL LAW—ARMED ROBBERY—FELONY-FIREARM—ACCESSORY
LIABILITY—STATUTES.

*A person who aids and abets in an armed robbery may be
punished as a principal; there is no difference between aiding
and abetting an armed robber and aiding and abetting one who
carries or has in his possession a firearm during the commis-
sion of a felony; therefore, a defendant may have accessory
liability and be found guilty of violating the felony firearm
statute as an accessory (MCL 750.527b[1], 767.39; MSA
28.424[2][1], 28.979).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Bruce R. Saperstein,* for defendants on appeal in cases 77-2397 and 77-2398.

*Richard E. Manning* and *Rose Mary C. Robinson,* for defendants on appeal in cases 77-2309 and 77-2389.

Before: N. J. KAUFMAN, P. J., and BEASLEY and P. R. MAHINSKE,* JJ.

BEASLEY, J. Defendants pled guilty to charges of armed robbery[1] and possession of a firearm in the commission of a felony,[2] in connection with two robberies of two different Detroit bars, on January 9, 1977, and January 24, 1977, respectively. The pleas were the result of a plea bargain under which other charges against defendants were dropped and the prosecutor agreed not to pursue habitual criminal possibilities against them. Each defendant was sentenced for each of the two robberies, first to a two-year mandatory term for the felony-firearm violation and not less than 25 nor more than 75 years in prison for armed robbery, the latter term to commence following the completion of the former. It was understood that the two sentences for each defendant would run concurrently. Defendants appeal as of right.

First, defendants contend that the trial judge

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 750.529; MSA 28.797.

[2] MCL 750.227b; MSA 28.424(2).

elicited no response from them as to their waiver of constitutional rights and, therefore, the plea-taking was procedurally defective. A review of the transcript in the instant case convinces us that defendants' claim of error is not supported by the facts. The trial judge explained to each defendant his various rights. He asked each defendant if he understood his rights and if he wished to plead guilty to the two counts. Each defendant said that he understood all of the rights explained by the trial judge and wished to plead guilty to the two counts. We decline to hold that there was error in this procedure.

Defendants next claim that the trial judge failed to establish a sufficient factual basis for their guilty pleas on the felony-firearm counts. The plea-taking transcript indicates Edgar Johnson had possession of and used a handgun in perpetration of both armed robberies. The claim that there was not sufficient factual basis for acceptance of the guilty plea, with respect to Edgar Johnson, is without merit.

The plea transcript indicates Walter Johnson aided and abetted the robberies and knew that his accomplice, Edgar Johnson, was armed. There is no indication that Walter carried, or had in his possession, a firearm at the time of the robberies. We interpret the felony-firearm statute to require that a defendant *personally* carry or have in his possession a firearm in order to be guilty thereunder.[3] Being an aider and abetter in an armed robbery is not enough to subject a defendant to the enhanced sentence of the felony-firearm statute.

Therefore, we set aside the convictions and sentences imposed on Walter Johnson for felony-fire-

[3] *Id.*

arm, but affirm his convictions and sentences for
armed robbery.

It is also contended by defendants that the
felony-firearm statute violates the state constitu-
tional prohibition against revising, altering or
amending other statutes by implication.

The article of the constitution which defendants
here claim is violated by the felony-firearm statute
is Const 1963, art 4, § 25, which provides:

"No law shall be revised, altered or amended by
reference to its title only. The section or sections of the
act altered or amended shall be reenacted and pub-
lished at length."

The rationale behind this prohibition was reviewed
by the Supreme Court in *Advisory Opinion re
Constitutionality of 1972 PA 294,*[4] which was ren-
dered in response to a request by the Governor
and the Senate for an advisory opinion as to the
constitutionality of 1972 PA 294. In its opinion,
the Supreme Court cited with approval Justice
COOLEY's language in *People v Mahaney,* 13 Mich
481 (1865), as follows:

"An amendatory act which purported only to insert
certain words, or to substitute one phrase for another
in an act or section which was only referred to but not
republished, was well calculated to mislead the careless
as to its effect, and was, perhaps, sometimes drawn in
that form for that express purpose. Endless confusion
.was thus introduced into the law, and the constitution
wisely prohibited such legislation. But an act complete
in itself is not within the mischief designed to be
remedied by this provision, and cannot be held to be
prohibited by it without violating its plain intent."[5]

[4] 389 Mich 441; 208 NW2d 469 (1973).

[5] 13 Mich at 497; 389 Mich at 472–473.

Thus, the Court made clear that the constitution does not prohibit all amendment by implication. If an act is complete within itself, it is not within the mischief the provision was designed to remedy.

An examination of the statute under attack in the instant case[6] indicates that it is an act complete within itself. It requires reference to no other statute for its meaning, nor does it alter or amend another statute by reference to its title. Therefore, we decline to hold that the felony-firearm statute falls within the prohibitions of Const 1963, art 4, § 25.

Finally, defendants contend that their convictions and consecutive sentences for armed robbery and felony-firearm arising from a single robbery violate constitutional prohibitions against double jeopardy.

The so-called felony-firearm statute, enacted in 1976, effective January 1, 1977, provides as follows:

"Sec. 227b. (1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.

"(2) The term of imprisonment prescribed by this section shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony. * * * "[7]

---

[6] MCL 750.227b; MSA 28.424(2).

[7] Id.

The statute was in answer to the continuing
demand that the Legislature do something about
the rising crime rate and, particularly, Detroit's
homicide rate which, at the time, was represented
by the media to be the highest in the nation.
There can be no question as to the Legislature's
intent; it was to require a mandatory, minimum
prison sentence in all felonies and attempted felo-
nies (except the two expressly excepted) where a
firearm was carried or possessed, in the hope of
reducing crime and homicides by handgun in par-
ticular. There also is no question that the legisla-
tive power encompasses both determining and de-
fining what conduct is deemed criminal and fixing
the range of sentences for violations.[8] Thus, de-
fendants' claim of unconstitutionality does not go

[8] *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977).
*See, Gore v United States,* 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405
(1958), where the Court gave great weight to legislative intent and
discussed the prospect of the court's entry into the domain of the
Legislature thus:

"In effect, we are asked to enter the domain of penology, and more
particularly that tantalizing aspect of it, the proper apportionment of
punishment. Whatever views may be entertained regarding severity
of punishment, whether one believes in its efficacy or its futility,
* * * these are peculiarly questions of legislative policy." (Citations
omitted.) 357 US at 393.

*See also,* 65 Yale L J 339, 363–364 (1956):

"The primary substantive problem is one of legislative intent, not
legislative power, for the legislature can award as many different
penalties as it deems desirable for a given act or transaction, or any
aspect of an act or transaction, as long as the statute accords substan-
tive due process of law and avoids the eighth amendment's prohibi-
tion of cruel and unusual punishments. This authority is inherent in
the power to make conduct criminal and to penalize it, and is not
limited in any meaningful sense by the concept of double jeopardy.
For example, since the legislature can make armed robbery a crime
punishable by twenty years' imprisonment, it can also pass one
statute prescribing ten years' imprisonment for robbery, and another
prescribing ten years' imprisonment for carrying a revolver in the
course of committing a robbery. Cumulative imposition of sentences
on a two-count indictment alleging both the committing of a robbery,
and the carrying of a revolver in the course of that robbery, is,
therefore, not double punishment for the same offense.

"Legislative intent is plain where two statutes are designed to

to the basic power of the Legislature to change, amend, enhance or otherwise augment sentences for particular crimes, but relates only to whether the Legislature chose an impermissible procedure to carry out an intent plainly within its prerogatives.

Defendants argue that among the guarantees afforded by the double jeopardy clause of the Federal and state constitutions is protection against multiple sentences for the same offense.[9] The language of the Federal and state double jeopardy provisions is as follows:

" * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * * ."[10]

"No person shall be subject for the same offense to be twice put in jeopardy."[11]

The cases indicate that a single act may give rise to a charge under more than one criminal statute when there is clear legislative intent to do

---

implement different social policies. For example, one statute may fix a fine of $50 for the sale of liquor on a Sunday, and a second prescribe a fine of $50 for the sale of liquor to a minor. If a dealer sells liquor to a minor on a Sunday, a court that awards two $50 fines for the single act has not imposed double punishment. Nor is there a serious problem of substantive law in the converse of this situation, where offenses are clearly alternative."

[9] *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969); *Ex parte Lange,* 85 US (18 Wall) 163; 21 L Ed 872 (1874). The penal codes of two states (California and New York) have express statutory provisions against double punishment. Other jurisdictions which have constitutional prohibitions only against double jeopardy, nevertheless, treat imposition of double punishment as double jeopardy. Since *Ex parte Lange,* the Supreme Court has not held squarely that multiple punishment for a single offense, in addition to being an erroneous interpretation of the statute making the offense punishable, also violates the double jeopardy clause. 65 Yale L J 339, n. 4 (1956).

[10] US Const, Am V.

[11] Const 1963, art 1, § 15.

so.[12] But where one of the two offenses charged is a necessarily lesser included offense of the other, under case law definitions adopted by the Supreme Court, recent Michigan cases involving drug violations appear to hold that convictions for both based on the same act are precluded.[13]

---

[12] 75 Yale L J 262 (1965). *Also see, Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977), *reh den,* 434 US 880; 98 S Ct 241; 54 L Ed 2d 164 (1977). That the intent of the Legislature is controlling was affirmed by the Court, which stated:

"The critical inquiry is whether Congress intended to punish each statutory violation separately. * * * In *Iannelli v United States* [420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975)], the Court concluded that Congress did intend to punish violations of § 1955 separately from § 371 conspiracy violations. Since the two offenses were different, there was no need to go further. * * * If some possibility exists that the two statutory offenses are the 'same offense' for double jeopardy purposes, however, it is necessary to examine the problem closely, in order to avoid constitutional multiple punishment difficulties." *Id.* at 155; 97 S Ct at 2218; 53 L Ed 2d at 183 (citations omitted).

Where the legislative intent is ambiguous, then certain rules of construction become applicable to determine whether separately defined crimes constitute the same offense for double jeopardy purposes. However, it is unnecessary to apply such rules or tests where the legislative intent is clear and unambiguous.

It cannot be contended that an individual needs constitutional double jeopardy protection against the Legislature's clear exercise of its proper penological function. The constitutional prohibition against cruel and unusual punishment, US Const, Am VIII, and the due process protections, US Const, Am V and XIV, and state constitutional counterparts provide adequate restraints on the Legislature's exercise of its power to define offenses and prescribe punishments.

[13] *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976); *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977). *See also,* 65 Yale L J 339, 347, n. 43 (1956):

"The lesser included offense doctrine, an exception to the same evidence test, provides that when a defendant has been placed in jeopardy of conviction of one offense, he cannot be prosecuted for another which is a lesser element of the first. * * * Sometimes prosecution for the lesser offense will bar trial for the greater. * * * It will readily be seen that the lesser included offense doctrine is often merely the same evidence test in different words. Thus if defendant is indicted for murder, and the jury on the first trial can return a verdict of manslaughter, an acquittal on the first trial acquits him of both murder and manslaughter. A second trial for manslaughter would require the same evidence that would have been necessary to sustain a conviction for that 'lesser included offense' on the first trial. It has been suggested that a better reason for barring second prosecutions, whether the first trial is for the lesser or the

But whether the basis for these rulings is the court's conclusion that the Legislature did not intend to permit two convictions, one for sale of heroin and one for possession of heroin, *or,* whether it is a new state interpretation of constitutional double jeopardy in which the judiciary interprets the words "same offense", as used in the double jeopardy clause of the Michigan constitution, as not requiring any consideration for the Legislature's intent in enacting a particular criminal statute, is far from settled.[14]

We say "new interpretation" because we are unable to reconcile *Martin* and *Stewart*[15] wholly with the leading Federal decisions interpreting the double jeopardy provision of the constitution. In *Blockburger v United States,*[16] defendant was found guilty by a jury of three counts of a five-count indictment alleging violations of the Federal Narcotics Act. Two counts involved sales on succeeding days of morphine hydrochloride *not in the original stamped package,* and the third involved one of the same sales but *not in pursuance of a written order.* Defendant was sentenced to three similar five-year terms to run consecutively. In affirming, the Supreme Court said Congress intended to make each sale a separate and distinct offense and to authorize sentence separately for each violation. The Court said "that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two of-

greater offense, is that the offenses are mutually exclusive or alternative: a defendant has committed either murder or manslaughter, never both."

[14] *People v Martin, supra; People v Stewart, supra.*

[15] 398 Mich 303; 247 NW2d 303 (1976), and 400 Mich 540; 256 NW2d 31 (1977).

[16] 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

fenses or only one, is whether each provision requires proof of an additional fact which the other does not". 284 US at 304.

In *Gore v United States*,[17] a jury found defendant guilty of all six counts of a six-count indictment. Counts one, two and three involved a sale of heroin on February 26, 1955, and counts four, five and six involved sale of cocaine on February 28, 1955. Counts one and four charged sales *not pursuant to a written order,* counts two and five involved sale and distribution *not in the original stamped package,* and counts three and six charged facilitating concealment and sale with knowledge that the drugs had been unlawfully imported in violation of the statute. Defendant was sentenced to six identical terms of one to five years with the sentences on counts one, two and three to run consecutively and the sentences on counts four, five and six to be consecutive but concurrent with those for counts one, two and three. In one sense, defendant's accumulated sentence was three to 15 years.

In a scholarly and historically accurate opinion affirming, Justice Frankfurter spells out, in persuasive terms, what double jeopardy is and what it is not. Among other things, he says:

"Finally, we have pressed upon us that the *Blockburger* doctrine offends the constitutional prohibition against double jeopardy. If there is anything to this claim it surely has long been disregarded in decisions of this Court, participated in by judges especially sensitive to the application of the historic safeguard of double jeopardy. In applying a provision like that of double jeopardy, which is rooted in history and is not an evolving concept like that of due process, a long course of adjudication in this Court carries impressive author-

---

[17] 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958).

ity. Certainly if punishment for each of separate offenses as those for which the petitioner here has been sentenced, and not merely different descriptions of the same offense, is constitutionally beyond the power of Congress to impose, not only *Blockburger* but at least the following cases would also have to be overruled."[18]

There then follow some seven decisions of the United States Supreme Court.

Also, in *Gore, supra,* Chief Justice Warren, although dissenting, makes it plain that in these situations appellate review for possible violation of double jeopardy means looking to the legislative intention, in the following language:

"The problem of multiple punishment is a vexing and recurring one. It arises in one of two broad contexts: (a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both proscriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a bank, though violative of two statutes, might warrant but a single punishment.

"*In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration. But this fact should not lead the judiciary, charged with the obligation of construing these statutes, to settle such questions by the easy application of stereotyped formulae.* It is at the same time too easy and too arbitrary to apply a presumption for or against multi-

---

[18] 357 US at 392.

ple punishment in all cases or even to do so one way in one class of cases and the other way in another. Placing a case in the category of unit-of-offense problems or the category of overlapping-statute problems may point up the issue, but it does not resolve it." (Emphasis added.)[19]

More recently, in *Brown v Ohio,*[20] Justice Powell said:

"The principal question in this case is whether auto theft and joyriding, a greater and lesser included offense under Ohio law, constitute the "same offense" under the Double Jeopardy Clause.

"Because it was designed originally to embody the protection of the common-law pleas of former jeopardy, see *United States v Wilson,* * * * the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. *The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments;* but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

"The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " (Emphasis added; footnotes omitted.)

These cases represent the law regarding the double jeopardy clause as embodied in the Fifth Amendment of the United States Constitution.[21] In *Benton v Maryland,*[22] the Federal double jeopardy clause was applied to the states. This means that a

---

[19] 357 US at 393–394.

[20] 432 US 161, 164–165; 97 S Ct 2221; 53 L Ed 2d 187 (1977).

[21] US Const, Am V.

[22] 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

state court can give *no less protection* to a defendant in a criminal case than is afforded by the double jeopardy clause of the Federal Fifth Amendment. Perhaps a state court, in interpreting a state constitution or in giving effect to a state statute, can give greater protection than that afforded under the Federal bill of rights, but we would believe that in interpreting the United States Constitution, the Michigan Supreme Court is bound by what the United States Supreme Court says it means.

In *People v Martin, supra,*[23] the Michigan Supreme Court cites a 1972 Maine case with approval where that court said:

" 'It is elementary that the State cannot divide a single offense into several parts according to time and conduct and base separate prosecutions upon and impose separate punishments for the various necessary divisions of that single crime. * * *

" 'The possession of narcotic drugs is an offense distinct from the sale thereof. But in the instant case the possession and sale clearly constituted one single and same act. The possession, as legally defined, is necessarily a constitutent part of the sale, as legally defined. Where the only possession of the narcotic drug is that incident to and necessary for the sale thereof, and it does not appear that there was possession before or after and apart from such sale, the State cannot fragment the accused's involvement into separate and distinct acts or transactions to obtain multiple convictions, and separate convictions under such circumstances will not stand. * * * The error is not cured by the fact the trial Court permitted the two sentences to run concurrently. * * * The conviction and sentence upon the charge of possession must be set aside.' *State v Allen,* 292 A2d 167, 172 (Me, 1972)."

The Maine decision seems to be contrary to the

---

[23] 398 Mich 303, 307–308; 247 NW2d 303 (1976).

established line of Federal decisions, three of which are here cited, which leaves to the legislature whether to separate sale of heroin from possession of heroin, whether to make sale and possession separate offenses, and whether to provide separate sentences for each. We would believe that the Federal cases afford a sounder, more authoritative construction of constitutional double jeopardy and are entitled to greater weight than that of the Maine case.[24]

We incline to believe that the basis for the decisions in *Martin* and *Stewart* is the Supreme Court's belief that in enacting the Controlled Substances Act of 1971,[25] the Legislature did *not* intend separate sentences and separate punishments for sale of heroin and for possession of heroin where the same heroin was possessed and sold in a single, continuous transaction.

Therefore, we decline to find that a new, expanded concept of double jeopardy prevails in Michigan. Every new liberal construction or expanded interpretation of double jeopardy does not represent progress. In the long haul, balance in the trial process between defense and prosecution gives greater promise of achieving a true result than tilting the scale to the defense for the exigencies of the moment. We would do well to heed Justice Frankfurter's advice[26] and to refrain from permitting double jeopardy to become an evolving concept.

No reasonable argument can be made against the conclusion that the Legislature intended an additional, mandatory prison sentence where a

---

[24] Similarly, the reasoning, balance and historical soundness of the Federal decisions outweighs the other state decisions cited in *People v Martin, supra.*

[25] MCL 335.301–335.367; MSA 18.1070(1)–18.1070(67).

[26] 357 US at 392.

firearm was carried or possessed in commission of a felony. The language of § 227b(2) is plain and unambiguous. The Legislature intends an additional specified penalty where a firearm is carried or possessed at the time of committing or attempting to commit a felony. Neither the trial judge nor the prosecutor has any discretion or choice if the proofs show the presence of the firearm. A mandatory, additional sentence as specified in the statute must be imposed.

We interpret felony-firearm to be a sentence-increasing or sentence-augmenting statute. As such, it is not within or subject to the greater offense—lesser included offense dichotomy. We would anticipate that the trial judges would instruct a jury to only give consideration to felony-firearm, *i.e.,* whether a defendant carried or had in his possession a firearm as defined in § 227b *if and after* the underlying felony or attempted felony was found to have been committed. The jury (or judge hearing a case nonjury), would then have for decision whether or not defendant had violated § 227b; and this would be in the nature of a special question. We do not believe this procedure involves double jeopardy, or double sentence, or double punishment.

While it is unnecessary to decide the same here, we also, however, would assume that § 227b may only be applied to enhance or augment a sentence if included as part of the original charge. In short, we would prohibit a court or prosecutor from entertaining a charge under § 227b in a separate trial either before or after trial for the main offense. Only where § 227b was charged and tried at the same time could it come under consideration by the fact finder.

In so ruling, we are aware that a difficult and

close issue is present here. That is indicated by the
fact that there is a substantial split of opinion
among panels of this Court on this issue. We also
rule without benefit of decision by the Supreme
Court respecting this issue.

Under these circumstances, we are particularly
sensitive to our obligation to give due deference to
these statutes enacted by a co-equal branch of
government. If we can interpret a statute so as to
uphold its constitutionality, we should do so. This
is particularly true where the legislative intention
is so unmistakably clear as here. At the same
time, we have accorded defendants full judicial
review of this constitutional issue and conclude
the double jeopardy clauses are not violated.

Affirmed with respect to defendant, Edgar John-
son; reversed with respect to defendant, Walter
Johnson, as to the felony-firearm conviction, but
affirmed with respect to both defendants as to the
armed robbery convictions.

P. R. MAHINSKE, J., concurred.

N. J. KAUFMAN, P. J. *(dissenting)*. I respectfully
dissent for the reasons stated in my dissenting
opinions in *People v Mitchell,* 85 Mich App 757;
272 NW2d 601 (1978), and *People v Drake John-
son,* 85 Mich App 752; 272 NW2d 599 (1978).

The pertinent portion of the information filed in
the present cases reads as follows:

*"COUNT I*
"did assault the above-named Complainant while
armed with a *dangerous weapon* or an article used or
fashioned in a manner to lead the person so assaulted
to reasonably believe it to be a dangerous weapon, to-
wit: *a handgun* and did then and there feloniously rob,
steal and take from the person of said Complainant, or

in his presence, United States Currency, contrary to Sec. 750.529, M.C.L.A.

"*COUNT II*

"did then and there carry or have possession of a firearm, to-wit: *a handgun* in the commission or attempt to commit a felony to-wit: Robbery Armed, Contrary to M.C.L.A. 750.227b." (Emphasis added.)

My reading of the above language shows that it would be impossible to prove one charge without the identical facts necessary to prove the other charge, nothing more, nothing less. Defendants were thus twice convicted and punished for the same offense, in violation of the double jeopardy provisions of the Federal and state constitutions. I would vacate the convictions on the "felony-firearm" counts and affirm those stemming from the armed robbery counts.

If I perceived the law regarding double jeopardy to be as the majority states it, I still could not agree with their disposition of the aiding and abetting issue. The majority reverses Walter Johnson's "felony-firearm" conviction because Walter Johnson himself did not carry or possess the handgun used in the armed robbery. Insofar as accessory liability[1] is concerned, I see no difference between aiding and abetting one who "carries or has in his possession" a firearm ("felony-firearm", MCL 750.527b(1); MSA 28.424(2)(1)), and aiding and abetting one who robs another "being armed" with a firearm (armed robbery, MCL 750.529; MSA 28.797). Clearly, a person who aids and abets in an armed robbery may be punished as a principal. See, *e.g., People v Turner,* 59 Mich App 589; 229 NW2d 861 (1975), *People v Sharp,* 57 Mich App 624; 226 NW2d 590 (1975). I would not reverse

---

[1] MCL 767.39; MSA 28.979.

Walter Johnson's conviction on the ground that it was his accomplice who carried the handgun, but would reverse both defendants' "felony-firearm" convictions on the basis of double jeopardy as stated above.