PEOPLE v GIOMBETTI

PEOPLE v ADKINS

Docket Nos. 45651, 45870. Submitted March 4, 1980, at Detroit.—
Decided May 6, 1980. Leave to appeal applied for.

Sergio Giombetti was convicted of second-degree murder and the
possession of a firearm in the commission of a felony. His
codefendant, Ward Adkins, was convicted of aiding and abet-
ting a second-degree murder and aiding and abetting in the
possession of a firearm during the commission of a felony. Both
defendants appeal. *Held:*

1. The conviction of a principal to a crime is not necessary to
convict an accessory. However, the prosecution must prove that
the crime was committed by someone and that the defendant
either committed or aided and abetted the commission of that
crime. It was error for the court to instruct the jury that, in
order to find Adkins guilty of aiding and abetting a homicide,
they must first find Giombetti guilty as a principal where the
evidence showed four armed participants in the incident result-
ing in the killing.

2. The absence of objection at trial precludes appellate review
of allegedly prejudicial remarks by a prosecutor in closing
argument unless the court's failure to review would result in a
miscarriage of justice. The prosecutor's remarks, even if im-
proper, did not constitute reversible error since they were in
response to issues raised by defense counsel.

Affirmed with respect to Adkins and reversed and remanded
for a new trial with respect to Giombetti.

D. E. HOLBROOK, JR., J., dissented in part. He would hold that
an aider and abettor in a homicide, who is not himself armed,

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 128.
    40Am Jur 2d, Homicide § 33.
[2] 40 Am Jur 2d, Homicide § 507.
[3] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[4] 75 Am Jur 2d, Trial §§ 218, 233.
[5] 21 Am Jur 2d, Criminal Law §§ 115-123, 127, 128.
    40 Am Jur 2d, Homicide §§ 27-40.

may not be convicted of violation of the felony-firearm statute. He would reverse Adkin's felony-firearm conviction because Adkins was not himself armed.

## Opinion of the Court

1. Criminal Law — Aiding and Abetting — Proofs.

The conviction of a principal to a crime is not necessary to convict an accessory; however, the prosecution must prove that the crime was committed by someone and that the defendant either committed or aided and abetted the commission of that crime.

2. Homicide — Aiding and Abetting — Instructions to Jury.

It was error, in a homicide trial, for the court to instruct the jury that, in order to find one defendant guilty of aiding and abetting a homicide, they must first find the other defendant guilty as a principal where the evidence showed four armed participants in the incident resulting in the killing.

3. Appeal — Criminal Law — Closing Argument — Failure to Object.

The absence of objection at trial precludes appellate review of allegedly prejudicial remarks by a prosecutor in closing argument unless the court's failure to review would result in a miscarriage of justice.

4. Criminal Law — Prosecutor's Remarks — Improper Remarks — Response to Defense Counsel.

A prosecutor's remarks, even if improper, do not constitute reversible error where made in response to issues raised by defense counsel.

Partial Concurrence and Partial Dissent by D. E. Holbrook, Jr., P.J.

5. Criminal Law — Statutes — Felony-Firearm — Personal Liability — Aiders and Abettors.

*An aider and abettor in a homicide, who is not himself armed, may not be convicted of violation of the felony-firearm statute (MCL 750.227b; MSA 28.424[2]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin*

and *A. George Best, II,* Assistants Attorney General, for the people.

*Steven Fishman,* for defendant Giombetti on appeal.

*Kenneth Lerner,* for defendant Adkins on appeal.

Before: D. E. HOLBROOK, JR., P.J., and R. M. MAHER and CYNAR, JJ.

PER CURIAM. Pursuant to a jury trial in Wayne County Circuit Court, Sergio Giombetti was convicted of second-degree murder, MCL 750.317; MSA 28.549, and the possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). Giombetti was sentenced to a term of 9 to 20 years on the conviction for second-degree murder, and to a consecutive two-year term for felony firearm. His codefendant, Ward Adkins, was convicted of aiding and abetting a second-degree murder, MCL 767.39, 750.317; MSA 28.979, 28.549. Adkins was also convicted of aiding and abetting in the possession of a firearm during the commission of a felony, MCL 767.39, 750.227b; MSA 28.979, 28.424(2). Adkins was sentenced to a term of 4 to 20 years for aiding and abetting a second-degree murder and to a consecutive two-year term for felony firearm. Both defendants appeal as of right.

The alleged murder of Kenneth Szydick occurred in the early morning hours of July 2, 1977. The decedent, Kenneth Szydick, had earlier in the day been socializing with a group of six or eight friends at Hemlock Park, which is located in the City of Dearborn. Mr. Szydick had brought his Dodge van to the park. Mr. Adkins, who was

visibly intoxicated, approached the group and complained that he had been "ripped off" for $1,000. The group did not know Adkins and asked him to leave. Two friends of Adkins named Antonio Curcuru and Sergio Giombetti walked up, apologized for their friend, shook hands, and they all left. Curcuru and Giombetti took Adkins to a bar. Adkins asked for their assistance in recovering his money. The group went to Sam Isabella's house in order to get guns.

Neither of the defendants testified at the trial. Salvatore (Sam) Isabella testified that he was originally charged with murder but pleaded guilty to manslaughter just before the trial with the understanding that he would testify against the others. Isabella said that at approximately 1 a.m. on the day in question, Giombetti came to his home and asked him to go with them to the park because his friend had been "hit". Isabella had met Adkins for the first time earlier that day. They took Isabella's car, and Isabella did the driving. On the way, Giombetti said he would take a gun and refused to be dissuaded. At this point, Curcuru grabbed a gun from beneath the seat where he (Curcuru) had placed it earlier. Upon their arrival at Hemlock Park, Adkins took a chain from the back seat of the car, said "come on" and went up the hill toward the parking lot where decedent's van was parked, followed by Curcuru and Giombetti. Isabella did not go into the park. His vision was obscured so that he could not see Adkins or Curcuru. He did see Giombetti fire a shot into the air and say "I'll teach you not to mess with Dearborn people". Isabella then heard some people from the van say "Let's go get him". Giombetti then assumed a "police-like" stance and fired several more shots at the van. The three men ran back to the car, and they drove off.

Curcuru also testified at the trial. He was arrested the day after the alleged shooting but was not formally charged. He testified that Isabella agreed to come along with the group, went into his house to get the guns and put them in the trunk of the car. When they arrived at the park, Isabella pulled out the guns, handing one to Giombetti and one to Adkins. Curcuru immediately took the gun from Adkins because Adkins was "too high". Isabella then gave Adkins a chain. Adkins, Curcuru and Giombetti headed for the adjacent parking lot, where decedent's van was located. Several people came toward them from the van, and a black man started pulling something out of a car trunk which looked like a jack. Shots were fired, but Curcuru did not see who did the shooting. They heard a girl screaming and left. Upon returning to the car, Curcuru asked Giombetti why he shot. Giombetti replied "I don't know".

Defense counsel moved for a directed verdict of acquittal at the close of the people's proofs. The motion was denied. The defendants produced no testimony on their own behalf.

On appeal, defendant Giombetti alleges that he was denied a fair trial because of the trial court's erroneous jury instructions on aiding and abetting. Specifically, the trial court instructed the jury several times that Adkins could not be convicted as an aider and abettor of murder unless Giombetti was found guilty as the principal. This precluded the jury from considering the possibility that either Isabella or Curcuru was the principal, to the detriment of Giombetti. The defendant preserved the issue for appellate review by objecting at trial, but the trial court refused to reinstruct the jury on this point.

It is well-settled that, in order to convict a

defendant as an aider and abettor, the principal need not be convicted. However, the existence of a guilty principal is required. *People v Mann,* 395 Mich 472, 478; 236 NW2d 509 (1975), *People v Miniear,* 8 Mich App 591, 596-597; 155 NW2d 222 (1967). It must only be shown that the crime was committed by someone and that defendant either committed or aided and abetted the commission of that crime. *People v Mann, supra, People v Merriweather,* 93 Mich App 529; 287 NW2d 284 (1979).

The standard criminal jury instruction on aiding and abetting, CJI 8:1:03(4), provides only:

"(4) First, the crime charged must have been committed either by the defendant or some other person. [However, it is no defense that there has not been a conviction.]"

However, the trial court herein emphasized that the jury must find Giombetti guilty as the principal and suggested to the jury that, in its order of deliberations, it should consider the guilt of Giombetti prior to its consideration of Adkins. We find that these jury instructions were erroneous, especially since Curcuru admittedly had a gun in his possession and no one was able to identify who did the actual shooting. We cannot say that the instruction was harmless error with respect to Giombetti, since there was no conflict in the testimony regarding the actions of Adkins and the trial court conditioned his conviction on the fact that Giombetti must be convicted. Therefore, we hold that Giombetti is entitled to reversal of his conviction and a new trial.

Both Adkins and Giombetti raise the allegation that the prosecutor's closing argument warrants reversal because he vouched for the credibility of his witnesses Isabella and Curcuru. In particular,

the prosecutor stated several times that Mr. Curcuru had no reason to lie because he had nothing to gain and there was insufficient evidence to charge him in connection with his participation in the crime.

We first note that no objection was made to these remarks during the trial. It is well-settled that the absence of objection at trial precludes appellate review of allegedly prejudicial remarks by a prosecutor in closing argument unless the Court's failure to review would result in a miscarriage of justice. *People v Pacely,* 51 Mich App 67; 214 NW2d 561 (1974), *People v Baldwin,* 74 Mich App 700; 254 NW2d 619 (1977), *rev'd on other grounds,* 405 Mich 550; 275 NW2d 253 (1979).

In her closing argument on behalf of the defendant Giombetti, defense counsel conjectured that both Isabella and Curcuru had "made a deal" when they agreed to testify against their friends. She referred to Curcuru as "a lucky man" because he had never been charged in the crime and said that Isabella had only agreed to testify during the week between Christmas and New Year "on the advice of his attorneys". This was a thinly-veiled allegation that the prosecution witnesses were lying.

Where the improper remarks of a prosecutor are made in response to issues previously raised by defense counsel, they do not constitute reversible error. *People v Green,* 34 Mich App 149, 151; 190 NW2d 686 (1971), *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977). The prosecutor herein was not improperly vouching for his witnesses but responding to the innuendos of defense counsel that his witnesses were fabricating their testimony in exchange for a "deal". In any event, we do not deem that the remarks of the prosecutor in closing

argument constituted a miscarriage of justice, especially because a cautionary instruction would have been sufficient to cure any prejudice.

We have closely examined the other issues raised by the defendants on appeal and find them to be without merit. We would thus affirm the conviction with respect to the defendant Adkins.

Affirmed with respect to Adkins. Reversed and remanded for a new trial with respect to Giombetti.

D. E. Holbrook, Jr., P.J., *(concurring in part, dissenting in part).* I would reverse Adkin's felony-firearm conviction for the reasons set forth in *People v Powell,* 90 Mich App 273; 282 NW2d 803 (1979), and *People v Walter Johnson,* 85 Mich App 654; 272 NW2d 605 (1978). With the balance of the opinion I agree.