**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 12, 2004**

PEOPLE OF THE STATE OF MICHGIAN,

    Plaintiff-Appellee,

v                               No. 120543

CLARENCE D. MOORE,

    Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHGIAN,

    Plaintiff-Appellee,

v                               No. 119862

ERWIN HARRIS

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

In these two cases, defendants were convicted of felony-firearm[1] under an aiding and abetting theory.[2] Felony-firearm is the crime of carrying or possessing a firearm during the commission or attempted commission of a felony. The issue before the Court is whether the prosecutor must establish that a defendant assisted in *obtaining* or *retaining* possession of a firearm, the test that was set forth in *People v Johnson,* 411 Mich 50, 54; 303 NW2d 442 (1981), in order to convict the defendant of felony-firearm under an aiding and abetting theory. We overrule *Johnson* because the test that it created is narrower than the test set forth in the language of the aiding and abetting statute. We conclude that under the statute, the proper standard for establishing felony-firearm under an aiding and abetting theory is whether the defendant's words or deeds "procure[d], counsel[ed], aid[ed], or abet[ted]" another to carry or have in his possession a firearm during the commission or attempted commission of a felony-firearm offense.[3] Applying that standard, we hold that there was sufficient evidence in each case to support the felony-firearm convictions, and we affirm both defendants' convictions.

---

[1] MCL 750.227b.

[2] MCL 767.39.

[3] *Id.*

2

## I.  Facts and Procedural History

### A

The charges against defendant Clarence D. Moore stem from a shooting in Flint on August 8, 1997. That night, Moore and his friend, DeJuan Boylston, argued with Jacky Hamilton and his brother, Johnny Hamilton. Shortly thereafter, Moore and Boylston approached the Hamilton brothers while they were fishing at a lake. Boylston was carrying a gun, and Moore told the two brothers that they had better start swimming out into the lake. Boylston then recognized Johnny Hamilton from basketball games in the neighborhood. This recognition prompted Boylston to retreat, telling Moore that he did not want a problem with the Hamiltons. According to Johnny Hamilton, after Boylston declined to shoot the brothers, Moore attempted to grab the gun from Boylston. During this time, Moore made derogatory statements to Boylston to encourage him to shoot the victims. He questioned Boylston's sense of masculinity and threatened that he would not associate with Boylston if Boylston did not shoot the Hamiltons. After walking about halfway up the hill, Boylston turned and fired, hitting Jacky, who later died from the gunshot wounds.

Following a jury trial, defendant Moore was convicted of murder in the first degree,[4] assault with intent to murder,[5] and felony-firearm[6] on an aiding and abetting theory.[7] In an unpublished opinion, the Court of Appeals affirmed Moore's convictions on all counts.

B

The charges against defendant Erwin Harris stem from a robbery that took place in Washtenaw County on September 28, 1998. Harris drove Eugene Mays to a gasoline station. Mays had a sawed-off shotgun in the vehicle. Harris first entered the store on the pretense of asking for directions. After leaving the store, he reentered moments later followed by Mays, who was wielding the shotgun. While Mays pointed the gun at the clerk, Harris approached a customer from behind and proceeded to remove the customer's wallet and other items from his pockets. The clerk refused to give Mays any money and pushed a button that locked the cash register. Although Harris repeatedly directed Mays to "pop," or shoot, the clerk after he locked the register, the two men left the store without physically harming either the clerk or the customer.

---

[4] MCL 750.316.

[5] MCL 750.83.

[6] MCL 750.227b.

[7] MCL 767.39.

4

Defendant Harris was convicted by a jury on two counts of armed robbery,[8] two counts of felony-firearm[9] on an aiding and abetting theory,[10] and one count of fleeing and eluding the police.[11]  Harris appealed his convictions for the armed robbery of the customer and for the two counts of felony-firearm.  In an unpublished, divided decision, the Court of Appeals upheld Harris's convictions.

C

Both Moore and Harris sought leave to appeal in this Court.  Each defendant argued that his conviction(s) for felony-firearm under an aiding and abetting theory should be reversed because he did not assist in either *obtaining* or *retaining* possession of the firearm, citing this Court's decision in *Johnson.*  This Court granted leave to appeal in both cases and ordered that the cases be argued and submitted to the Court together.  In each of these cases, the order granting leave to appeal limited the issues to "whether there is sufficient evidence to convict the defendant of violating MCL 750.227b and whether the decision in *People v Johnson,* 411 Mich 50 (1981), should be

---

[8] MCL 750.529.

[9] MCL 750.227b.

[10] MCL 767.39.

[11] MCL 750.479a(3).

5

overruled or modified." *People v Harris,* 467 Mich 896 (2002); *People v Moore,* 467 Mich 897 (2002).

II

Resolution of these cases requires interpretation of the felony-firearm statute and the aiding and abetting statute. Statutory interpretation is a question of law that this Court reviews de novo. *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 739; 641 NW2d 567 (2002). If the statutory language is certain and unambiguous, that language is given its ordinary and generally accepted meaning. *Piper v Pettibone Corp,* 450 Mich 565; 542 NW2d 269 (1995).

A

The felony-firearm statute, MCL 750.227b(1), states:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony, and shall be imprisoned for 2 years.

The felony-firearm statute applies whenever a person carries or has a firearm in his possession when committing or attempting to commit a felony. The evident purpose of the statute is to enhance the penalty for the carrying or possession of firearms during the commission of a felony and thus to deter the use of guns. *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374, 391; 280 NW2d 793 (1979), overruled in part on other grounds by *People v*

6

*Robideau,* 419 Mich 458; 355 NW2d 592 (1984). The important rationale behind the felony-firearm statute is demonstrated in its unique and severe punishment scheme. Conviction for felony-firearm results in automatic imprisonment, which may not be suspended. The guilty person is also ineligible for probation or parole during the mandatory prison sentence. The felony-firearm prison term must be served before and consecutively to any term of imprisonment for the underlying felony. A second conviction of felony-firearm requires a flat five year sentence, while a third or subsequent conviction requires a flat ten year sentence. MCL 750.227b(1)-(3).

The aiding and abetting statute, MCL 767.39, states:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

The purpose of the aiding and abetting statute is "to abolish the common law distinction between accessories before the fact and principals so that one who counsels, aids or abets in the commission of an offense may be tried and convicted as if he had directly committed the offense." *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974), citing *People v Gould,* 384 Mich 71, 77; 179 NW2d 617

7

(1970).  The phrase "aids or abets" is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime.  *Palmer*, p 378.

> Aiding and abetting means to assist the perpetrator of a crime.  An aider and abettor is one who is present at the crime scene and by word or deed gives active encouragement to the perpetrator of the crime, or by his conduct makes clear that he is ready to assist the perpetrator if such assistance is needed.  [21 Am Jur 2d, Criminal Law, § 206, p 273.]

Each defendant argues that his conviction(s) for felony-firearm on an aiding and abetting theory should be reversed because he did not assist in either *obtaining* or *retaining* possession of the firearm, citing this Court's decision in *Johnson.*

In *Johnson,* this Court resolved a division in the Court of Appeals over whether a person who does not actually possess a firearm could be convicted under the felony-firearm statute as an aider and abettor.[12]  *Johnson*

---

[12] Contrast *People v Tavolacci,* 88 Mich App 470, 475; 276 NW2d 919 (1979), rev'd *People v Johnson, supra,* ("[O]ne may be convicted as an aider and abettor to the felony-firearm offense."), with *People v Bridges,* 98 Mich App 436, 439; 296 NW2d 275 (1980), rev'd 411 Mich 969 (1981), (A person who does not actually possess a firearm may not be convicted under the statute as an aider and abettor.), *People v Powell,* 90 Mich App 273, 275; 282 NW2d 803 (1979), ("[T]he language of the felony-firearm statute clearly contemplates 'personal' possession of a firearm by the defendant. . . ."), and *People v Johnson,* 85 Mich App 654, 658; 272 NW2d 605 (1978), rev'd 411 Mich 50 (1981), ("We

consisted of two separate cases in which each defendant was convicted of felony-firearm on a theory of aiding and abetting. In the first case, defendant Johnson and an accomplice robbed a bar in Detroit. The accomplice held the gun while Johnson took money from the cash register. They then split the money after leaving the bar. In the second case, defendant Tavolacci brought the victim, an undercover narcotics officer, to a pool hall under the pretense of making a drug deal. The defendant's two accomplices then took the officer to a remote field and attempted to shoot him. The defendant stayed at the pool hall while the attempted murder took place. *Johnson* resolved the division at the Court of Appeals by concluding that a defendant may be guilty of felony-firearm even if the defendant did not personally possess a firearm during the commission of a felony if the defendant is shown to have aided and abetted another who had such possession. The Court remanded both cases to the respective trial courts.

In remanding, the Court added the restriction that to obtain a conviction for aiding and abetting the crime of

interpret the felony-firearm statute to require that a defendant *personally* carry or have in his possession a firearm in order to be guilty thereunder. Being an aider or abetter in an armed robbery is not enough to subject a defendant to the enhanced sentence of the felony-firearm statute." [emphasis in original].).

9

carrying or possessing a firearm during the commission of a felony, it must be shown that the defendant assisted in *obtaining* or *retaining* the possession of the firearm:

> To convict one of aiding and abetting the commission of a separately charged crime of carrying or having a firearm in one's possession during the commission of a felony, it must be established that the defendant procured, counselled, aided, or abetted and *so assisted in obtaining the proscribed possession, or in retaining such possession otherwise obtained.* See *People v Doemer*, 35 Mich App 149, 192 NW2d 330 (1971); *People v Francis*, 71 Cal 2d 66, 450 P2d 591, 75 Cal Rptr 199 (1969).
>
> In neither of the instant cases does the record show that the defendant assisted the accomplice to obtain or retain possession of the firearm which the accomplice possessed during the commission of the felony. [*People v Johnson, supra,* at 54 (emphasis added).]

### B

Under the standard set forth in *Johnson,* each defendant's conviction would be reversed because neither defendant specifically aided the principal in "obtaining" or "retaining" the firearm for immediate or eventual possession by the principal during the commission or attempted commission of a felony.

Moore's accomplice was carrying the gun during the offense. There was no evidence introduced showing that Moore assisted Boylston in either obtaining or retaining possession of the gun. Similarly, Harris's accomplice was in possession of the weapon at all times, and there is no

10

indication in the record that Harris assisted Mays in obtaining or retaining possession of the gun. The reasoning of the dissent in *Harris* clearly applies to both defendants:

> There is no proof that Harris carried or loaded the firearm for Mays, that he purchased the firearm and gave it to Mays, or even that he reminded Mays to bring the firearm into the store with him. If Harris did help Mays obtain or retain the firearm before he entered the store, the record is simply silent on the matter. [Unpublished dissenting opinion, issued July 27, 2001, p 4 (Docket No. 222468).]

Thus, under *Johnson's* holding at 54 that "it must be established that the defendant procured, counselled, aided, or abetted and so assisted in obtaining the proscribed possession, or in retaining such possession otherwise obtained," both defendants' convictions of felony-firearm under an aiding and abetting theory would be reversed.

C

A close examination of the Court's decision in *Johnson* reveals that this holding was overly narrow because it unnecessarily restricted the scope of the class of persons who can be convicted of felony-firearm on an aiding and abetting theory. The Court relied on two drug possession

11

cases, *People v Francis* and *People v Doemer,*[13] in reasoning that to convict one of felony-firearm under an aiding and abetting theory, "it must be established that the defendant procured, counselled, aided, or abetted and so assisted in obtaining the proscribed possession, or in retaining such possession otherwise obtained." *Johnson* at 54.

The *Johnson* Court's holding takes the language of the *Francis* opinion out of context. The *Francis* court concluded that "[t]he record [did] not show that Francis aided or encouraged [his accomplice] in obtaining or retaining possession of marijuana." *Francis* at 72. The actual test that the *Francis* court articulated for aiding and abetting is much broader than the test set forth in the language quoted in *Johnson*. The *Francis* court stated that "[i]n order to hold the accused as an aider and abettor the test is *whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures.*" *Francis* at 72, quoting *People v Villa,* 156 Cal App 2d 128, 134; 318 P2d 828 (1957) (emphasis added). Thus, the language relied on by the *Johnson* Court is not the actual test set forth in *Francis* for aiding and abetting possessory crimes.

---

[13] In deciding *Doemer,* the Michigan Court of Appeals simply relied on the same language as in *Francis*, a California Supreme Court case.

12

Nothing in the language of Michigan's felony-firearm statute supports *Johnson's* narrow application of aiding and abetting principles to the commission of felony-firearm. In fact, the plain language of the statute suggests otherwise.[14] In *People v Mitchell,* 456 Mich 693, 698; 575 NW2d 283 (1998), this Court noted that the list of four exceptions[15] to the statute was exclusive and that the Legislature intended "to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." The felony-firearm statute makes no mention of a narrower standard or an exception for those who aid and abet felony-firearm; therefore, aiding and abetting felony-firearm should be no different from aiding and abetting the commission of any other offense.

---

[14] The felony-firearm statute, MCL 750.227b(1), states in part:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years.

[15] The four enumerated exceptions are for violations of MCL 750.223 (unlawful sale of a firearm), MCL 750.227 (carrying a concealed weapon), MCL 750.227a (unlawful possession of a firearm by a licensee), and MCL 750.230 (alteration of identifying marks on a firearm).

Similarly, nothing in the aiding and abetting statute suggests that it should apply differently to a possessory offense than to any other crime. The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Carines,* 460 Mich 750, 768; 597 NW2d 130 (1999). The aiding and abetting statute neither expressly nor impliedly limits the persons or crimes encompassed by its terms. The language of the statute applies to "every person" who commits "an offense." *Johnson*'s holding, that to convict one of felony-firearm under an aiding and abetting theory it must be established that the defendant assisted in either obtaining or retaining possession of the firearm, is not based on the language of the aiding and abetting statute.

We do not disagree with *Johnson's* holding that a felony-firearm conviction is proper if a defendant aided the principal in "obtaining" or "retaining" the firearm while intending that the principal possess or carry the firearm during the commission or attempted commission of a

14

felony, which possession or carrying by the principal occurs. But a defendant also can assist in the commission of a felony-firearm violation in other ways. All that is required to prove aiding and abetting felony-firearm is that the defendant aided and abetted another in carrying or having in his possession a firearm while that other commits or attempts to commit a felony.

Adherence to the *Johnson* standard has resulted in numerous cases where the intent behind the statutes—to deter the use of firearms during the commission of felonies and to punish one who assists in the commission of an offense as if he had directly committed such offense—has not only been unrealized, but has been subverted.[16] The

---

[16] Various panels of the Court of Appeals have applied the narrow *Johnson* test in felony-firearm aiding and abetting cases, often producing results that are incompatible with the statutes. In *People v Buck,* 197 Mich App 404, 418; 496 NW2d 321 (1992), reversed in part by *People v Holcomb,* 444 Mich 853; 508 NW2d 502 (1993), the Court of Appeals held that there was insufficient evidence to sustain the felony-firearm conviction of one of the defendants because the prosecutor failed to show that he aided or abetted the acquisition or retention of the weapon at issue. Following the *Johnson* standard, the Court reversed the conviction of a defendant who had dragged a shooting victim back into reach after being shot so that one of his codefendants could shoot the victim twice more, finally killing him. In *People v Eloby,* 215 Mich App 472, 478; 547 NW2d 48 (1996), the defendant was convicted of kidnapping, robbery, and sexual assault. Although he aided and abetted the kidnapping, his conviction for felony-firearm was reversed because he did not actually hold the gun until *after* the victim was transported from the site of the kidnapping to the house where she was later assaulted.

language of our statutes, the *Johnson* Court's misreading of *Francis,* and appellate cases following *Johnson* that are incompatible with the statutes all command that this Court overrule the narrow *Johnson* standard. For these reasons, we overrule *Johnson* and hold that aiding and abetting the commission of felony-firearm is no different from aiding and abetting the commission of any other felony.[17]

### III

Having overruled the narrow standard for aiding and abetting set forth in *Johnson,* we now apply general aiding and abetting principles to the facts of the cases before us. Under the aiding and abetting statute, MCL 767.39, the

---

[17] As we stated in *People v Petit,* 466 Mich 624, 633; 648 NW2d 193 (2002):

It is well established that overruling precedent must be undertaken with caution. The application of stare decisis is generally "'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Robinson v Detroit,* 462 Mich 439, 463; 613 NW2d 307 (2000), quoting *Hohn v United States,* 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). "However, stare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions . . . ." [462 Mich] 463.

Although under the doctrine of stare decisis we hesitate to overrule a prior decision by the Court, we may do so when we are certain that the case was wrongly decided and that "less injury will result from overruling than from following it." *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904).

16

correct test for aiding and abetting felony-firearm in Michigan is whether the defendant "procures, counsels, aids, or abets in [another carrying or having possession of a firearm during the commission or attempted commission of a felony]."

The prosecutors must do more than demonstrate that defendants aided the commission or attempted commission of the underlying crimes (here murder and robbery). Rather, the prosecutors must demonstrate that defendants specifically aided the commission of felony-firearm.[18] Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended

---

[18] Despite the concern expressed in Justice Taylor's dissent, our opinion does not make "an aider and abettor in virtually any gun-related crime guilty of felony-firearm." *Post* at 1. As explained above, we specifically require the prosecutor to do more than demonstrate that the defendants aided the commission or attempted commission of the underlying crimes. Nor are we suggesting that the fact that the defendant incidentally benefited from the principal's possession of the firearm is sufficient to convict the defendant of aiding and abetting felony-firearm possession. Rather, to convict a defendant of felony-firearm under an aiding and abetting theory, the prosecutor must present evidence proving that the defendant intentionally aided or abetted felony-firearm possession by specific words or deeds.

17

the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. *Carines, supra,* at 768. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. *People v Smock,* 399 Mich 282, 285; 249 NW2d 59 (1976). It must be determined on a case-by-case basis whether the defendant "'performed acts or gave encouragement that assisted,'" *Carines, supra* at 768, quoting *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995), in the carrying or possession of a firearm during the commission of a felony.

In each of the cases now before us, the prosecutor established that a violation of the felony-firearm statute was committed and that the defendant intentionally aided or abetted that violation. The defendant in each case aided or abetted felony-firearm by actively urging, inciting, encouraging, or motivating the principal to use the weapon that was in the principal's possession. Implicit in the *use* of a firearm is the *possession* of that firearm. Thus, when a defendant specifically encourages another possessing a gun during the commission of a felony to use that gun, he aids and abets the carrying or possessing of that gun just as surely as if he aided or abetted the principal in

18

obtaining or retaining the gun.  Moreover, the defendant in *Harris* encouraged and assisted the principal's possession of the firearm by specifically relying on that possession to intimidate his own robbery victim and by specifically ensuring that the principal would be able to successfully enter and exit the scene of the crime while carrying the firearm.

### *People v Moore*

In this case, defendant Moore procured, counseled, aided, or abetted the possession of a firearm during the commission of a felony—the murder of Jacky Hamilton. Although Moore did not "obtain or retain" the gun that killed the victim, nor did he pull the trigger, his words and actions incited Boylston to use the firearm that was in his possession to do exactly that.  Moore provoked Boylston to shoot at the victims by attempting to grab the gun away from him and by telling him to "give me the gun; I'll do it."[19]  When Boylston first refused to shoot and turned to walk away from the victims, Moore attacked his sense of masculinity and threatened to dissociate himself from

---

[19] Justice Cavanagh's dissent argues that Moore's actions in attempting to take away the gun that Boylston possessed "did not encourage his accomplice's possession; Moore was actually encouraging just the opposite." *Post* at 5.  But Moore's words and actions, viewed in context, do not evidence an intent to deprive Boylston of the gun, but rather an intent to ensure that Boylston use the gun that was in his possession.

Boylston if he did not shoot the two men. It is clear that Moore's words and deeds were intended to encourage Boylston to use the gun against the two victims during the commission of a felony. In so provoking and inciting a hesitant Boylston to use the gun that he was carrying, Moore necessarily induced Boylston to possess that gun. Thus, applying the general aiding and abetting standard to the facts of this case, we hold that there was sufficient evidence in the record to establish that defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation. Accordingly, we affirm Moore's felony-firearm conviction.

### *People v Harris*

Defendant Harris drove his accomplice, Mays, to the gasoline station. Harris first entered the store and "cased" its interior on the pretense of asking for directions. He left the store and then promptly reentered, followed by Mays, who was carrying a gun. Although Mays clearly had actual possession of the firearm at all times, Harris specifically used his confederate's possession of that firearm to intimidate and rob a store customer. Harris also encouraged Mays to "pop," or shoot, the store clerk when the clerk locked the register and refused to hand over any money. When the attempt to rob the store

20

proved unsuccessful, defendant drove away with his accomplice and the firearm.

Harris's words and deeds, viewed in their entirety, demonstrated his intent to procure, counsel, aid, or abet the possession of a firearm during the commission of the armed robberies. He first "cased" the store, thereby ensuring that Mays could succeed in entering it while carrying a gun. He then relied on May's possession of the firearm to facilitate his own robbery of the customer. Finally, Harris expressly encouraged Mays to use the firearm in his possession to shoot the clerk after the clerk refused to give the men any money. Thus, Harris specifically aided and abetted the commission of felony-firearm. Accordingly, we affirm Harris's felony-firearm convictions.

IV

Because we have overruled *Johnson's* narrow test for aiding and abetting a felony-firearm in Michigan, we must also note that the pertinent criminal jury instructions for that crime are now invalid. The instructions for felony-firearm under an aiding and abetting theory directly, CJI2d 11.35(6), and indirectly, CJI2d 11.36(6), currently state "that the defendant intentionally helped the person who possessed the firearm get or keep it." The new instructions should not include any of the limiting

21

language of *Johnson.* Just as our new test is no longer limited to obtaining or retaining the firearm, our jury instructions should likewise not be limited to the language of getting or keeping that firearm.

## Conclusion

There is no foundation in the language of either the aiding and abetting statute or the felony-firearm statute to support this Court's narrow ruling in *Johnson.* To the extent that *Johnson* required a defendant to assist in either obtaining or retaining possession in order to be convicted of felony-firearm under an aiding and abetting theory, that decision is overruled. Following MCL 767.39, the appropriate test for aiding and abetting felony-firearm in Michigan is whether the defendant "procures, counsels, aids, or abets in [the commission of a felony-firearm offense]." Applying this standard, we hold that there was sufficient evidence in each case to support the felony-firearm convictions, and we affirm both defendants' convictions.

> Elizabeth A. Weaver
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 120543

CLARENCE D. MOORE,

    Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 119862

ERWIN HARRIS,

    Defendant-Appellant.

_____

CAVANAGH, J. *(dissenting)*.

Today's majority claims there are more ways to aid or abet possession of a firearm during the commission of a felony than those stated in *People v Johnson*, 411 Mich 50; 303 NW2d 442 (1981). Therefore, the majority sees fit to overrule *Johnson*. This conclusory claim, however, is not supported by a reasoned analysis grounded in the statutory

language of MCL 750.227b(1) and 767.39.[1]  Therefore, I must respectfully dissent.

## I.  ANALYSIS

A fundamental flaw in the analysis offered by the majority is that it does not distinguish between a defendant's actions in aiding or abetting the predicate felony and aiding or abetting felony-firearm possession. The majority correctly states that "the proper standard for establishing felony-firearm under an aiding and abetting theory is whether the defendant's words or deeds 'procure[d], counsel[ed], aid[ed], or abet[ted]' another to carry or have in his possession a firearm during the

---

[1] MCL 750.227b(1) relates to the carrying or possessing of a firearm when committing or attempting to commit a felony, and states the following:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years . . . .

MCL 767.39 relates to the abolition of the distinction between an accessory and a principal, and states the following:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

2

commission or attempted commission of a felony-firearm offense." *Ante* at 2. However, the majority then errs because it does not use this standard in its analysis. The majority finds there was sufficient evidence to convict defendants of felony-firearm possession because they aided or abetted in the commission of a crime. But it does not matter that the defendant procured, counseled, aided, or abetted *the commission of a crime*. What matters is that the defendant, procured, counseled, aided, or abetted *felony-firearm possession.* This analytical error permeates the opinion and results in convictions that violate the plain language, as well as the intent, of the statutes.

There is a difference between aiding or abetting the *use* of a firearm and aiding or abetting the *carrying or possession* of a firearm, yet the majority's analysis is devoid of this distinction. The majority admits that it was not established at trial that defendants Harris and Moore aided or abetted their respective accomplices in obtaining or retaining a firearm. The majority explicitly states, "Under the standard set forth in *Johnson*, each defendant's conviction would be reversed because neither defendant specifically aided the principal in 'obtaining' or in 'retaining' the firearm for immediate or eventual possession by the principal during the commission or

3

attempted commission of a felony." *Ante* at 10. However, the majority's analysis does not describe what defendants Harris and Moore did, other than encourage their respective accomplice to *use* the firearm, to support convictions of felony-firearm possession under an aiding or abetting theory. The majority admits, "The defendant in each case aided or abetted felony-firearm by actively urging, inciting, encouraging, or motivating the principal to *use* the weapon that was in the principal's possession." *Ante* at 18 (emphasis added). Procuring, counseling, aiding, or abetting the *use* of a firearm in a predicate felony is not the same as procuring, counseling, aiding, or abetting the *carrying* or *possession* of a firearm.

Regarding defendant Moore, the majority states that Moore incited his accomplice to possess and use the firearm by attempting to grab the gun away from him and attacking the accomplice's masculinity. "It is clear that Moore's words and deeds were intended to encourage Boylston [the accomplice] to *use* the gun against the two victims during the commission of a felony." *Ante* at 20 (emphasis added).

I agree that defendant Moore's attacks on the accomplice's masculinity encouraged the accomplice to *use* the firearm. But the majority's argument that Moore encouraged *possession* by unsuccessfully trying to take the

4

firearm away is nonsensical. The accomplice already possessed the firearm, and Moore tried to take it away. Moore's actions did not encourage his accomplice's possession; Moore was actually encouraging just the opposite. Arguing that Moore's actions, which sought to divest his accomplice of possession of the firearm, actually *encouraged* possession defies logic.

Regarding defendant Harris, the majority states, "Harris expressly encouraged Mays [the accomplice] to *use* the firearm in his possession to shoot the clerk after the clerk refused to give the men any money." *Ante* at 21 (emphasis added). The majority also states that Harris "relied on May's possession of the firearm to facilitate his own robbery of the customer." *Ante* at 21. As with defendant Moore, the majority adequately explains how defendant Harris encouraged the *use* of the firearm, yet nowhere in the opinion is it explained how either defendant aided or abetted the *carrying* or *possession* of the firearms. In both of these cases what is really being encouraged is the *use* of the firearm.

Contrary to the majority's assertion, I am not suggesting we treat a possessory offense differently from any other crime. Nor am I suggesting that we treat aiding or abetting felony-firearm possession differently from any

5

other crime.  I am merely applying basic rules of statutory construction and, once again, giving effect to the words used by the Legislature.  See *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993).  The difference between possession and use is not a trivial one, and the fact that the Legislature chose to state that MCL 750.227b(1) applies only to a "person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony" should not be ignored.

While a defendant can aid or abet felony-firearm possession by physically assisting an accomplice in obtaining or retaining a firearm, there are also other ways to aid or abet an accomplice beyond physical assistance and *Johnson* does not preclude convictions for nonphysical assistance.  A defendant can offer verbal encouragement to an accomplice *before* the accomplice has possession of the firearm or *while* the accomplice has possession of the firearm.  But to meet the statutory standards, the verbal encouragement must relate to obtaining or retaining possession, not just the use.  And while a person must indeed possess a firearm in order to use it, it does not mean that a defendant who encourages the use of a firearm that is already in the possession of an accomplice also encourages possession.  Interpreting the statutory language

6

in this manner would essentially make the felony-firearm possession statute a strict liability statute for anyone who commits or participates in a crime with an accomplice who possesses a firearm.  A fair reading of the statutory language does not support the majority's position.

## II.  THE REENACTMENT RULE

The majority also ignores the fact that the Legislature reenacted the felony-firearm possession statute *after* the *Johnson* decision, yet the Legislature did not address the alleged "error" in *Johnson*.  Under the reenactment rule, "[i]f a legislature reenacts a statute without modifying a high court's practical construction of that statute, that construction is implicitly adopted." *People v Hawkins*, 468 Mich 488, 519; 668 NW2d 602 (2003) (Cavanagh, J., dissenting), citing 28 Singer, Statutes and Statutory Construction (2000 rev), Contemporaneous Construction, § 49.09, pp 103-112.  The Legislature "is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it [reenacts] a statute without change . . . ." *Lorillard, a Div of Loew's Theatres, Inc v Pons*, 434 US 575, 580; 98 S Ct 866; 55 L Ed 2d 40 (1978). "The reenactment rule differs from the legislative-acquiescence doctrine in that the former canon provides 'prima facie

evidence of legislative intent' by the adoption, without modification, of a statutory provision that had already received judicial interpretation." *Hawkins*, *supra* at 488, quoting Singer at 107. In overruling *Johnson*, the majority reaches its desired result by ignoring the actions and intent of our Legislature, as well as the plain language of the statutes.

### III. IMPROPERLY OVERRULING *JOHNSON*

Finally, I must address the majority's stated *hesitancy* to overrule *Johnson*, which was a unanimous opinion of this Court. The majority's zeal in overruling *Johnson* cannot, under any definition, be considered *hesitancy*. Its fervor results in an opinion that *admits* that the defendants cannot be convicted without overruling *Johnson*. The majority then offers a justification for overruling *Johnson* that does not comport with the statutory language used in MCL 750.227b(1) and 767.39. Further, the majority provides no sound example of how a person can aid or abet felony-firearm possession other than assisting in obtaining or retaining the possession of the firearm.

While the majority has liberally peppered its opinion with the word "possession," merely claiming that defendants aided or abetted the possession of a firearm does not make it so. Besides the copious use of the word "possession,"

8

the majority only supports its decision to overrule *Johnson* with conclusory statements that *Johnson's* test was too "narrow." However, the statutory language and the actions of our Legislature belie this erroneous conclusion.

## IV. CONCLUSION

Accordingly, I respectfully dissent and would reverse the defendants' convictions for felony-firearm possession because the convictions violate the statutory language of MCL 750.227b(1) and MCL 767.39.

Michael F. Cavanagh
Marilyn Kelly

9

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                    No. 120543

CLARENCE D. MOORE,

    Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

V                                    No. 119862

ERWIN HARRIS,

    Defendant-Appellant.
_____

TAYLOR, J. *(dissenting)*.

I agree with part I of Justice Cavanagh's dissent. I write separately to emphasize my concern that the majority's opinion makes an aider and abettor in virtually any gun-related crime guilty of felony-firearm. Yet, the plain language of the statute only makes an aider and abettor guilty of felony-firearm if his aiding and abetting

is directed toward the carrying or possession of the firearm.[1] That is the reading we should give the statute.

Under the Fourteenth Amendment to the United States Constitution, it is required that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited. *Dunn v United States,* 442 US 100, 112; 99 S Ct 2190; 60 L Ed 2d 743 (1979). This is an exercise of the rule of lenity,[2] which should control the resolution of this case and cause us to conclude that all the felony-firearm statute criminalizes is aiding and abetting the carrying or possessing of a firearm, nothing more.[3]

Clifford W. Taylor

---

[1] MCL 750.227b(1), the statute we are interpreting, relates to the carrying or possessing a firearm when committing or attempting to commit a felony, and states the following:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years. . . .

[2] The propriety of the rule of lenity was recently reaffirmed by the Supreme Court in *United States v Granderson*, 511 US 39, 54; 114 S Ct 1259; 127 L Ed 2d 611 (1994).

[3] I recognize that MCL 750.2 provides that "The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. . . ." It is, of course, a fundamental axiom of American law, rooted in our history as a people and requiring no citations to authority, that the requirements of the Constitution prevail over a statute in the event of a conflict.

2