MARKMAN, J.
oconcurring). Justice KELLY has asserted once more her view that the majority is insufficiently respectful of the precedents of this Court.[1] I believe it is *224 important to respond. To assist in this, I have attached a chart that summarizes the 40 cases during the past seven terms in which a precedent of this Court has been overruled and in which the Court majority has been aligned against Justice KELLY. [2] From this chart and from the cases that are referenced therein, I draw the following observations concerning precedent and the current Court:
(1) The dispute between the Court majority and Justice KELLY in these 40 cases is less about attitudes toward precedent than about the substantive merits of the opinions being overruled. That is, Justice KELLY agrees with the opinions being overruled and the justices in the majority do not. There is no evidence in these 40 cases that Justice KELLY, out of regard for stare decisis, has ever sustained a precedent with which she disagrees, merely that Justice KELLY agrees with these precedents.[3] The majority, on the other hand, for rea *225 sons summarized in the chart,[4] believes that these 40 cases each overrules a precedent of this Court in which the clear language of the law was misconstrued, or in which the policy preferences of the justices were substituted for those of the lawmaker. Thus, the differences among the justices reflected in these cases are focused less on the role of precedent than on the role of the judge in interpreting the law.
(2) Moreover, it is noteworthy that the present majority, over Justice Kelly’s dissent, issued the first-ever opinion of this Court that identified a clear standard for determining when a wrongly decided precedent warrants overruling, and recognized that a variety of considerations, including individual reliance interests and the extent to which a past decision has become embedded in the legal fabric, must be evaluated.[5] In anticipation of the day when her own judicial philosophy once again prevails in this Court and she is confronted with the 40 precedents of the present majority, Justice KELLY would do well to share her own standards concerning when she would or would not overrule such obviously distasteful precedents.[6]
*226 (3) Perhaps the most significant point of the chart is that no meaningful discussion of a court’s attitude toward precedent can be based solely on an arithmetical analysis in which raw numbers of overrulings are simply counted. Such an analysis obscures that not all precedents are built alike, that some are better reasoned than others, that some are grounded in the exercise of discretionary judgments and others in the interpretation of plain language, that some are thorough in their analyses and others superficial. The chart demonstrates that the overrulings of precedent occurring during the past seven terms have overwhelmingly come in cases involving what the justices in the majority view as the misinterpretation of straightforward words and phrases in statutes and contracts, in which words that were not there were read into the law or words that were there were read out of the law.[7] Where such misinterpretation occurs, not only does this Court disregard its duty to interpret the law, eroding the constitutional separation of powers in the process, the Court also overturns compromises made in the legislative process, second-guesses judgments of the lawmaker, and renders the law increasingly arbitrary and unpredictable.
(4) The chart also makes clear that the present court majority has been disciplined in stating expressly when a precedent has been overruled. The majority has never *227 attempted to obscure when a precedent was overruled or to minimize the number of such precedents by dubious “distinguishings” of prior caselaw. Rather, it has been forthright in identifying and critiquing precedents that were viewed as wrongly decided and warranting overruling. As the chart demonstrates, on a significant number of past occasions, the Court left intact precedents that were inconsistent with new decisions, essentially allowing future litigants to choose among inconsistent precedents as in columns A and B of a Chinese restaurant menu. For this reason in particular, while it may well be that the present majority has overruled more precedents than its predecessors during some selected equivalent period, this cannot be stated with confidence by Justice KELLY or by anyone else for it has not been demonstrated.[8]
(5) The debate in which Justice KELLY wishes to participate is one in which an overruling of precedent, any overruling of precedent, is a “bad” thing and is to be deplored. She is less interested in the far more significant and nuanced debate of when precedents ought to be sustained and when they ought not to be. How does a justice thoughtfully apply the standards set forth in Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000)? How does a justice balance the need to respect precedents with his or her oath in support of the United States and Michigan constitutions? When does a justice weigh his or her obligation to follow the opinions of his or her prede *228 cessors with his or her obligation to get the law “right”?[9] There are no simple or pat answers to these questions. The people of Michigan, whose law it is that this Court upholds, may read the decisions contained in this chart and determine for themselves whether Justice KELLY or the justices in the majority have served better as stewards of the judicial power under the Michigan Constitution.
[[Image here]]
*229 [[Image here]]
*230 [[Image here]]
*231 [[Image here]]
*232 [[Image here]]
*233 [[Image here]]
*234 [[Image here]]
*235 [[Image here]]
*236 [[Image here]]
*237 [[Image here]]
*238 [[Image here]]
*239 [[Image here]]
*240 [[Image here]]
*241 [[Image here]]
*242 [[Image here]]
*243 [[Image here]]
*244 [[Image here]]
*245 [[Image here]]
*246 [[Image here]]
*247 [[Image here]]
KEY: This chart represents cases decided after January 1,2000, in which Justice Kelly dissented and in which a majority of the Court voted to overrule a decision. The reasoning of the Court majority is set forth in highly summary form; the reader should refer to the opinion as a whole for clarifying detail.

 This opinion constitutes my exclusive response to Justice Kelly’s criticisms concerning this Court’s approach to precedent for I do not join footnotes 8 and 14 of the majority opinion. In her criticisms, Justice Kelly claims that the majority overturns precedent at an “alarming and unprecedented rate,” the majority “exhibits disrespect for stare decisis,” *224 the majority is “intent on overturning precedent,” the majority has declared itself “more capable of understanding the law... than any justice who sat before,” the majority has “ordained itself master [of a] higher law,” the majority “damages the integrity of the judicial process,” and the majority is “alarmingly activist.”

 In three other cases during this same period, the Court overruled precedent, but with a different alignment of justices. People v Starks, 473 Mich 227; 701 NW2d 136 (2005); People v Lively, 470 Mich 248; 680 NW2d 878 (2004); People v Moore, 470 Mich 56; 679 NW2d 41 (2004). These 40 cases occurred against a backdrop of 543 published opinions issued during this same period and more than 18,500 dispositions of applications for leave to appeal.

 Justice Kelly asserts that I imply that she would “not have the same respect for stare decisis if majority control of the Court switched” during her tenure. Post at 257 n 12. She further asserts that I suggest that she has “refused to overturn precedent merely because [she agrees with it].” Post at 264 n 20. Neither of these assertions is accurate. Rather, what I state is that there is simply no evidence one way or the other that Justice Kelly is any more averse to overruling precedent than the majority; there is merely evidence that Justice Kelly is more approving of the precedents that have been overruled by this Court than the majority. A justice’s *225 perspective on stare decisis is not evidenced by her willingness to maintain precedents with which she agrees, but by her willingness to maintain precedents with which she disagrees. As the most recent example of Justice Kelly’s willingness to reverse precedents with which she actually disagrees, see her opinion in Haynes v Neshawat, 477 Mich 29; 729 NW2d 488 (2007), overruling Kassab v Michigan Basic Prop Ins Assn, 441 Mich 433; 491 NW2d 545 (1992).

 The summaries obviously cannot do full justice to the issues involved in these cases. These are designed simply to identify the essential issue in controversy in these 40 cases.

 Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000).

 In response to this inquiry, Justice Kelly now posits a standard that would assess whether a precedent is “ ‘free from absurdity, not mischievous in practice, and consistent with one another.’ ” Post at p 255 n 8 *226 (citation omitted). While at least this is a standard of sorts, it is hard to imagine a standard more deferential to judges and less deferential to the law.

 The instant case illustrates this proposition well for Justice Kelly, unlike the justices in the majority, would effectively engraft onto MCL 691.1404 language upholding its 120-day notice requirement only if there was “prejudice caused to the government by the failure to supply notice within such time.” Thus, the 120-day notice requirement would sometimes mean what it says and would sometimes not. Whatever the policy merits of Justice Kelly’s amendments from the bench, such language nowhere appears within the actual statute enacted by the Legislature.

 Justice Kelly identifies 61 overruled precedents during the years in question, rather than the 40 (or 43) we identify. This is because, in several instances, she treats as multiple overrulings an opinion overruling a single proposition of law that has been reiterated by the Court. Thus, for example, a decision to overrule the standard for granting summary judgment— a standard articulated in countless opinions of this Court— might count as an overruling of each of these opinions.

 Justice Kelly makes light of what she describes as this Court’s belief in its “solemn duty” to “rewrite Michigan caselaw to ‘get the law “right.” ’ ” Post at p 256 n 10 . Although as Robinson, supra at 463-468 makes clear, a variety of factors must be considered in evaluating whether to overrule a precedent, I do confess to thinking that “getting the law right” is a rather significant part of this Corut’s constitutional responsibilities. For Justice Kelly, however, a misreading of the law is apparently acceptable as long as it is “free from absurdity.” A rather tolerant standard. I would prefer to hold this Court to a higher standard in interpreting the will of the people and their elected representatives. See also Robertson v DaimlerChrysler Corp, 465 Mich 732, 756; 641 NW2d 567 (2002), observing that a legal system in which “the public may read the plain words of its law and have confidence that such words mean what they say” serves many of the same goals as stare decisis.