# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAWANTA DERIN COVINGTON,

       Defendant-Appellant.

UNPUBLISHED
April 12, 2016

No. 325610
Wayne Circuit Court
LC No. 13-007478-FC

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.529; MCL 750.157a, possession of burglary tools, MCL 750.116, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm defendant's convictions, but remand for possible resentencing.

Defendant's convictions arise from the robbery of Mike's Detroit Jewelry in Hamtramck on August 1, 2013. One of the people participating in the robbery, Frank Jackson (Jackson), was killed by a security guard at the jewelry store.

Defendant first argues that the record evidence was insufficient to support his conviction of felony-firearm under an aiding and abetting theory because the prosecutor did not prove that he performed acts or gave encouragement with the intention of assisting his accomplices in keeping possession of their firearms. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). We view the evidence presented in the light most favorable to the prosecution and determine whether a rational trier of fact could have found, including through reasonable inferences from the evidence, that the essential elements of the crime were proven beyond a reasonable doubt. *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007). The standard of review for a claim challenging the sufficiency of the evidence is deferential. *Bailey*, 310 Mich App at 713.

To convict a defendant of felony-firearm, the prosecution is required to prove "that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Taylor*, 275 Mich App at 179 (citation omitted). In this case, defendant was charged with

felony-firearm under an aiding and abetting theory. In *People v Moore*, 470 Mich 56, 58-59; 679 NW2d 41 (2004), our Supreme Court considered the language of both the felony-firearm statute and the aiding and abetting statute, and ultimately held, in pertinent part:

> [T]he prosecutors must demonstrate that defendants specifically aided the commission of felony-firearm. Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*People v*] *Carines*, 460 Mich 750,] 768; 597 NW2d 130 (1999)]. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. *People v Smock*, 399 Mich 282, 285; 249 NW2d 59 (1976). It must be determined on a case-by-case basis whether the defendant " 'performed acts or gave encouragement that assisted,' " *Carines, supra* at 768; 597 NW2d 130, quoting *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995), in the carrying or possession of a firearm during the commission of a felony. [*Moore*, 470 Mich at 70-71 (footnote omitted).]

The *Moore* Court also observed that the phrase "aids or abets" in the aiding and abetting statute "is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of [a] crime." *Id.* at 63.

In this case, the evidence was sufficient for the jury to convict defendant of felony-firearm under an aiding and abetting theory. First, defendant's accomplices, Jackson and codefendant Darnell Eric Redmond (Redmond), possessed guns during the armed robbery. See *id.* at 70. Jackson held a gun to the store's security guard's head and Redmond had a .45 caliber handgun in his waistband that was recovered by the police right after the armed robbery. Second, there was ample evidence that defendant engaged in acts that assisted Jackson and Redmond in the commission of felony-firearm. See *id.* For example, trial testimony included that defendant entered the jewelry store several moments before his accomplices and wandered about the store in a suspicious manner. From this evidence, the jury could have reasonably inferred that defendant was "casing" the jewelry store before his accomplices entered, and acting as a decoy, distraction or diversion to the staff employed there. Defendant was also carrying a hammer and a pillowcase, leading to an inference that he was ready to secure and carry away the fruits of the armed robbery.

And, third, the evidence was sufficient for the jury to conclude that defendant intended the commission of the felony-firearm offense or knew that Redmond and Jackson intended its commission at the time that he engaged in the acts that provided aid and encouragement. See *id.* at 70-71. Defendant entered a jewelry store carrying supplies to commit an armed robbery, and was joined shortly thereafter by accomplices wielding handguns. The jury could have reasonably inferred that he intended the commission of the felony-firearm offense. Further, as the prosecution argues, an aider and abettor's knowledge of the principal's intent may be inferred

-2-

from the facts and circumstances giving rise to the criminal offense. *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010). Defendant's fingerprints and palm prints, as well as Redmond's fingerprints, were found on a stolen Jeep that quickly left the area of the jewelry store after being sighted by the police, and sped away when pursued by the police. Together with the carrying of the implements of the armed robbery and his diversionary and distracting behavior, there was ample evidence to allow the jury to conclude that defendant knew of Jackson's and Redmond's intentions to carry guns during the commission of the armed robbery. In sum, defendant's felony-firearm conviction was sufficiently supported by the evidence.

Defendant next contends that the trial court erred in scoring Offense Variable (OV) 3 because the evidence did not support a conclusion that his conduct in the commission of the charged offenses was a cause of Jackson's death. We disagree.

In *People v Hardy*, 494 Mich 430; 835 NW2d 340 (2013), our Supreme Court set forth the standard of review for a sentencing guidelines scoring issue:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*Id.* at 438 (footnotes omitted).]

"Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

MCL 777.33, provides, in pertinent part:

(1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) A victim was killed …………………………………………… 100 points

(b) A victim was killed …………………………………………… 50 points

* * *

(2) All of the following apply to scoring offense variable 3:

(a) In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points.

(b) Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense.

As noted in *People v Laidler*, 491 Mich 339; 817 NW2d 517 (2012), the language of MCL 777.33(2)(b) makes it "clear that the defendant's criminal actions must constitute a factual cause

of a death for purposes of OV 3." *Id*. at 345. The question that must be considered is: "'but for' defendant's commission of a crime, would his coperpetrator's death have occurred?" *Id*.

In *Laidler*, the defendant and his accomplice attempted to break into a person's home, and the prosecution's theory was that the defendant "had boosted [the accomplice]" up to the window of the home, six feet off of the ground. *Id*. at 342. The homeowner saw the accomplice's hand extend inside the window after hearing glass shatter and shot the accomplice, who subsequently died. *Id*. at 341. The defendant was assessed 100 points under OV 3. *Id*. at 342. The Court concluded that the assessment of 100 points was not error, where "[b]ut for the instant criminal activity that defendant coperpetrated, and but for defendant's specific assistance in enabling his coperpetrator to reach into the window of the home being invaded, there would have been no need for the homeowner to respond to the invasion of his home . . . ." *Id*. at 345. The Court also recognized that but for the defendant's commission of a crime, his accomplice would not "have been placed in the position in which he was shot and killed." *Id*. Further, the fact that the homeowner's gunshot killed the accomplice did not alter its conclusion; the language of MCL 777.33 did not speak to only a single cause of death and a coperpetrator is a "victim" for purposes of assessing points under OV 3. *Laidler*, 491 Mich at 346-347.

The trial court's decision to assess 100 points for OV 3 was supported by a preponderance of the evidence, and we are not left with a definite and firm conviction that the trial court made a mistake. Defendant entered the jewelry store and spent several moments "casing" the establishment in a suspicious manner before his accomplices, Jackson and Redmond, joined him. Accordingly, it was reasonable to infer that defendant acted as a decoy and diversion to distract the security guard's attention, which allowed Jackson to be in a position to draw a gun and hold it to his head. But for the criminal activity that defendant coperpetrated, and but for defendant's "specific assistance" in "casing" the jewelry store and providing a distraction for the security guard so Jackson could hold a gun to his head, there would have been no need for the security guard to respond by shooting Jackson. See *Laidler*, 491 Mich at 345. We conclude that defendant's criminal actions were a factual cause of Jackson's death, and that Jackson's death "resulted from" defendant's criminal actions as contemplated by MCL 777.33(2)(b). See *id*. at 345-347.

Defendant next contends that the trial court impermissibly engaged in judicial fact-finding to assess 100 points for OV 3 by concluding that defendant's criminal actions resulted in Jackson's death. The prosecution concedes that remand is necessary pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We agree. Because defendant did not raise this challenge in the trial court, our review is for plain error affecting his substantial rights. *Id*. at 392.

In *Lockridge*, our Supreme Court concluded that, to the extent Michigan's sentencing guidelines require judicial fact-finding beyond facts admitted by a defendant or necessarily found by the jury, they are constitutionally deficient. *Lockridge*, 498 Mich at 364. To address the constitutional infirmity, the Court severed MCL 769.34(2) where it made the sentencing guidelines range as scored on the basis of impermissible judicial fact-finding mandatory. *Id*. As relevant to this appeal, the *Lockridge* Court held:

We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005):

\* \* \*

. . . [I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing. *Id*. at 118. [*Id*. at 395, 397.]

This procedure has become known as a *Crosby* remand. *Id*. at 397. The *Lockridge* Court then set forth a procedure for the trial court to follow on remand: the defendant must have an opportunity to avoid resentencing and, in determining whether the trial court would have imposed a different sentence but for the unconstitutional constraint, the court should consider only the circumstances that existed at the time of the original sentence. *Id*. at 398.

In this case, defendant was assessed 5 points for OV 2, 100 points for OV 3, and 10 points for OV 9, for a total of 115 points. Defendant's Prior Record Variable score was 20 points, placing defendant in the C-VI cell of the Class A sentencing grid, and calling for a minimum sentence range of 135 to 225 months. MCL 777.62. On appeal, defendant only challenges the assessment of points for OV 3. The trial court assessed 100 points, concluding that Jackson's "death result[ed] from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(2)(b). These facts were not admitted by defendant or necessarily found by the jury beyond a reasonable doubt, given that defendant was convicted of armed robbery, conspiracy to commit armed robbery, possession of burglary tools, and felony-firearm. He was acquitted of assault with intent to commit murder. Without the 100 points assessed for OV 3, defendant would have been placed in the C-I cell of the Class A sentencing grid, which calls for a minimum sentence range of 42 to 70 months. MCL 777.62. Accordingly, defendant has established that his guidelines minimum range was "actually constrained by the violation of the Sixth Amendment" and has made a "threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. Therefore, this matter is remanded to the trial court for possible resentencing in accordance with the *Crosby* procedure. See *id*. at 397-398.

Finally, defendant argues that exculpatory evidence was withheld from him in violation of his due process rights because the police and the prosecution did not investigate cellular phone records. After review for plain error, because this issue was not raised in the trial court, we disagree. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *People v Chenault*, 495 Mich 142, 149-150, 155; 845 NW2d 731 (2014), our Supreme Court discussed the requirements for a defendant to establish that the prosecution has violated the rule set forth in *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963):

> The Supreme Court of the United States held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. In identifying the essential components of a *Brady* violation, the [United States] Supreme Court has articulated a three-factor test:
>
> > The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued. [*Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).]
>
> Stated differently, the components of a "true *Brady* violation," are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material. *Id*. [*Chenault*, 495 Mich at 149-150.]

This Court has recognized that due process does not require the prosecution to seek and find exculpatory evidence. *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003).

Here, as an initial matter, we note that it does not appear defendant had requested cellular telephone records from the prosecution. In any event, in support of his argument, defendant refers to evidence that the police, when searching Jackson's home, found what appeared to be a recently paid cellular telephone bill. Defendant also notes that a cellular telephone was recovered by police from the area where defendant was standing in the jewelry store. Defense counsel questioned Detective George about why the police did not investigate defendant's and Jackson's cellular telephone records. Detective George testified that the police investigation did not yield a "working" cellular telephone for Jackson and he did not believe such action was necessary where he had enough evidence "for this crime to connect everything together." Specifically, Detective George concluded he had ample evidence to connect defendant to Jackson and Redmond where defendant's palm prints and fingerprints were on the stolen Jeep, which was characterized as the "getaway car," and where an anonymous telephone caller contacted the Hamtramck Police Department to inquire about both defendant and Redmond.

Defendant has not met the requirements set forth in *Chenault*, 495 Mich at 149-150. The prosecution did not suppress exculpatory evidence. And there is nothing in the record to suggest that further investigation into Jackson's and defendant's alleged telephone records may have been in some way favorable or exculpatory to defendant or material to his guilt or innocence. Finally, as noted above, the prosecutor is not under any obligation to seek and secure evidence exculpatory to defendant. *Coy*, 258 Mich App at 21. Accordingly, defendant has not established a violation of the *Brady* rule and his claim of error is without merit.

We affirm defendant's convictions, but remand to the trial court for possible resentencing in accordance with the *Crosby* procedure. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood