*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TASHARA NEAL,

        Defendant-Appellant.

UNPUBLISHED
April 29, 2021

No. 351576
Wayne Circuit Court
LC No. 19-004023-02-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

YUSEF FORD,

        Defendant-Appellant.

No. 351693
Wayne Circuit Court
LC No. 19-004023-01-FC

Before: TUKEL, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] codefendants Yusef Ford and Tashara Neal, who were tried jointly before separate factfinders, appeal as of right their convictions and sentences. In Docket No. 351693, Ford appeals his convictions for armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a weapon with unlawful intent, MCL 750.226, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, following guilty verdicts by a jury. Ford was sentenced to 6 ½ to 20 years' imprisonment for armed robbery, 5 to 10 years' imprisonment for assault with intent to do

---

[1] On December 11, 2019, this Court consolidated these appeals. *People v Ford*, unpublished order of the Court of Appeals (Docket Nos. 351576 and 351693).

-1-

great bodily harm less than murder, one to five years' imprisonment for carrying a firearm with unlawful intent, and two terms of two years' consecutive imprisonment for the two counts of felony-firearm.

In Docket No. 351576, Neal appeals her convictions for armed robbery and felony-firearm entered after a bench trial. Neal was sentenced to 5 to 15 years' imprisonment for armed robbery and two years' consecutive imprisonment for felony-firearm. Finding no error as to either defendant, we affirm the convictions and sentences.

## I. FACTS

Ford's and Neal's convictions arise from an armed robbery at a Dollar Store ("the Store") on Grand River in Detroit, Michigan, on April 26, 2019. On that day, Ford and Neal visited the Store three times. Prior to returning the second time, Ford and Neal had already planned to steal Cartier sunglasses that belonged to the victim, who worked at the Store. The victim's job duties included greeting customers and loss prevention. When Ford and Neal returned to the store for the third time, Ford parked his vehicle in the alley next to the Store. The two had planned for Ford to stay in the alley to "watch [Neal's] back, and protect her from [the victim]." Neal walked up to the Store to steal the victim's sunglasses. At the front door of the Store, Neal opened the door and called for the victim. When he came to the door to speak to her, she grabbed the sunglasses off of the victim's face and ran back toward the alley. The victim chased after Neal, and when Neal reached the alley, she turned the corner into the alley, where Ford was standing. The victim was close behind Neal, and when the victim reached the alley, Ford shot him. After the victim was shot, Ford and Neal left the scene. Ford and Neal were arrested and charged for their involvement in the armed robbery and shooting.

In the trial court, Ford filed a motion to sever the trials, arguing that he would be prejudiced by a joint trial because he and Neal had mutually exclusive defenses. Ford contended that it was his defense that he was not present at the scene, while Neal intended to argue that she was present at the scene and a participant, but did not know that Ford intended to shoot the victim. The trial court denied Ford's motion, concluding that Ford would not be prejudiced by a joint trial; the trial court reasoned that, whether tried jointly or separately, Ford would have to defend against Neal's statement.

At trial, Neal testified in her own defense, asserting that she planned to steal the victim's sunglasses, but she neither intended for Ford to shoot the victim, nor did she know that he had a gun at the scene. Ford's jury heard Neal's testimony. Ford and Neal now appeal their convictions and sentences.

## II. DOCKET NO. 351693

## A. SEVERANCE

Ford argues that the trial court erred in denying his motion to sever the trials. We disagree.

## 1. STANDARD OF REVIEW

"The decision to try two defendants jointly or separately lies within the discretion of the trial court, and that decision will not be overturned absent an abuse of that discretion." *People v Furline*, 505 Mich 16, 20; 949 NW2d 666 (2020). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017).

## 2. ANALYSIS

"There is no absolute right to separate trials, and in fact, strong policy favors joint trials in the interest of justice, judicial economy, and administration." *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015) (citation and quotation marks omitted). "Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *People v Hana*, 447 Mich 325, 338 n 3; 524 NW2d 682 (1994), amended on reh in part sub nom *People v Gallina*, 447 Mich 1203 (1994), and amended on reh in part sub nom *People v Rode*, 447 Mich 1203 (1994), citing *Richardson v Marsh*, 481 US 200, 209; 107 S Ct 1702, 1708; 95 L Ed 2d 176 (1987).

Nonetheless, the Michigan Supreme Court recently reaffirmed that "severance may be warranted when defendants' 'mutually exclusive' or 'antagonistic' defenses create a 'serious risk' of prejudice." *Furline*, 505 Mich at 21, quoting *Hana*, 447 Mich at 344-346. "As *Hana* acknowledged, severance may be warranted when defendants' 'mutually exclusive' or 'antagonistic' defenses create a 'serious risk' of prejudice. But we explained that the defenses must be 'irreconcilable' and create such great tension 'that a jury would have to believe one defendant at the expense of the other.' " *Furline*, 505 Mich at 21, quoting *Hana*, 447 Mich at 344-346. " 'Defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.' Prejudice requiring reversal occurs 'only when the competing defenses are so antagonistic at their cores that both cannot be believed.' " *Furline*, 505 Mich at 21, quoting *Hana*, 447 Mich at 349-350. Nevertheless, not all prejudice constitutes reversible error: " '[I]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.' " *Furline*, 505 Mich at 21, quoting *Hana*, 447 Mich at 349. Rather, "severance should be granted 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.' " *Hana*, 447 Mich at 359-360, quoting *Zafiro v United States*, 506 US 534, 538; 113 S Ct 933, 122 L Ed 2d 317 (1993). "[R]eversible prejudice exists when one of the defendant's substantive rights, such as the opportunity to present an individual defense, is violated." *Hana*, 447 Mich at 360 (citation and quotation marks omitted).

"[T]he dual-jury procedure is a partial form of severance, to be evaluated under the standard applicable to motions for separate trials." *Id*. at 359. "The issue is whether there was prejudice to substantial rights after the dual-jury system was employed." *Id*.

Where mutually antagonistic defenses are presented in a joint trial, there is a heightened potential that a single jury may convict one defendant, despite the absence of proof beyond a reasonable doubt, in order to rationalize the acquittal of another. That dilemma is not presented to dual juries. Each jury is concerned only with the culpability of one defendant; thus, they both can find the defendants innocent or guilty without the uneasiness of inconsistency that would be presented to a single jury in a joint trial. The chance for prejudice is therefore significantly lessened. [*Id*. at 360.]

Further, the *Hana* court addressed the specific issue at hand in this case—whether someone in Ford's position was prejudiced when his jury was allowed to hear the codefendant's testimony shifting blame. The *Hana* Court stated that "[a] defendant normally would not be entitled to exclude the testimony of a former codefendant if the district court did sever their trials, and we see no reason why relevant and competent testimony would be prejudicial merely because the witness is also a codefendant." *Id*. at 361. When a codefendant testifies in his own defense at trial, "he thereby waived his Fifth Amendment rights regarding the events in question." *Id*. "Thereafter, it became permissible for the prosecution to call that defendant as a witness in the trial of the codefendant." *Id*.

In *Hana*, the Court also addressed the companion cases *People v Rode* and *People v Gallina*. *Id*. at 334-353. In *Rode* and *Gallina*, the defendants were tried jointly before separate juries. *Id*. at 334. After the prosecution rested, Rode presented his case and testified on his own behalf. *Id*. at 357. At that time, the prosecution requested to reopen proofs to call Rode as a witness against Gallina. *Id*. The trial court stated that "Rode's testimony would be presented only one time, before both juries, with defendant Rode's counsel conducting the direct examination and the prosecutor and defendant Gallina's counsel doing cross-examination." *Id*. When Gallina presented his defense, he also testified on his own behalf and the same trial procedure was followed in regard to direct and cross-examination. *Id*. at 358. On appeal, Rode and Gallina argued that, if their trials had been severed, their respective juries would not have heard their codefendant's testimony. *Id*. at 359. The *Hana* Court concluded that both Rode and Gallina "fail[ed] to demonstrate what trial rights were violated by the dual-jury procedure or how the juries' determinations were unreliable." *Id*. at 360. The *Hana* Court further concluded that there was no indication that the defendants were restricted in their presentation of a defense, "nor was either jury exposed to evidence that would have been barred from their considerations in separate trials." *Id*.

In this case, the trial court did not err in denying Ford's motion to sever the trials. At trial, after the prosecution rested, Neal testified in her own behalf. The trial court allowed Ford's jury to hear Neal's testimony, with both the prosecution and Ford's counsel afforded the opportunity to cross-examine Neal. Neal testified that Ford shot the victim in the alley. This testimony was contrary to Ford's defense theory that he was not present at the scene at the time of the shooting. On appeal, Ford fails to identify any testimony or evidence which the jury would have been barred from considering if there had been separate trials. Ford contends only that he was prejudiced when Neal was allowed to testify in front of his jury about Ford's involvement. This argument lacks merit. Even if the trials had been severed, the prosecution could have called Neal to testify, as her testimony constituted a waiver of her Fifth Amendment right against self-incrimination, and thus nothing to which Neal testified would have been barred had they been tried separately.

Further, there was a partial severance through separate factfinders. Although Ford's jury heard Neal testify that Ford was present at the scene and shot the victim, Neal was not presenting her own defense to Ford's jury because Ford's jury was not deciding Neal's guilt or innocence. Before Ford's jury, Neal was merely a witness, not a defendant; and Ford's counsel had the opportunity to cross-examine her. Because Ford's jury was concerned only with Ford's culpability, believing Neal's testimony did not mandate that Neal be found not guilty of the charges against her while Ford be found guilty of the charges against him, as required to establish irreconcilable defenses. Both factfinders were free to believe Neal and both were free to disbelieve her, because having separate factfinders allows inconsistent verdicts. See *Furline*, 505 Mich at 21 (" 'Defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant.' "), quoting *Hana*, 447 Mich at 349-350. Here, however, the allowance of inconsistent verdicts, through the mechanism of separate factfinders, necessarily means there were not irreconcilable defenses, and thus any prejudice arising from the joint trial was thereby significantly mitigated.

Moreover, the joint trial did not preclude Ford from presenting a defense. During Ford's closing argument, his trial counsel argued that neither the surveillance videos nor the photographs of the actual shooting showed the face of the shooter; thus, there was no evidence that Ford was the shooter. Trial counsel also urged the jury to consider why Neal may have had a motive to lie regarding Ford's involvement. Thus, Ford has failed to demonstrate that any specific trial right was violated by the joint trial; the trial court thus did not abuse its discretion in denying Ford's motion to sever.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Ford also argues that trial counsel provided ineffective assistance of counsel when counsel failed to provide an offer of proof or an affidavit to support Ford's motion to sever the trials. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

In order to preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[2] hearing in the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Ford did not file a motion for a new trial or a *Ginther* hearing in the lower court, so this issue is unpreserved.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. However, because Ford did not move for a new trial or a *Ginther* hearing in the lower court, no factual record was created in regard to Ford's

---

[2] People v Ginther, 390 Mich 436; 212 NW2d 922 (1973).

claim of ineffective assistance of counsel. Therefore, this Court's review is limited to mistakes apparent on the record. *Id*.

## 2. ANALYSIS

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden of establishing that " '(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different.' " *People v Allen*, 953 NW2d 197, 197 (2021), quoting *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted).

" '[S]everance is mandated . . . only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice.' " *Furline*, 505 Mich at 20, quoting *Hana*, 447 Mich at 346; MCR 6.121(C). "The affidavit or offer of proof must state 'facts on which the court might determine whether . . . a joint trial might result in prejudice.' " *Furline*, 505 Mich at 20, quoting *Hana*, 447 Mich at 339.

No affidavit or offer of proof was submitted to the trial court with Ford's motion to sever the trials. However, the trial court considered Ford's arguments as to why the trials should be severed and properly denied Ford's motion to sever the trials. For the reasons stated previously, a motion to sever beyond separate factfinders lacked merit. An affidavit or offer of proof would not have changed the outcome. Therefore, Ford failed to establish that his trial counsel performed deficiently or that Ford was prejudiced by trial counsel's failure to file an affidavit or an offer of proof.

## III. DOCKET NO. 351576

## A. STANDARD OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. That standard derives from *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979). Our Supreme Court has expressly held that the *Jackson* standard also applies to bench trials. *People v Petrella*, 424 Mich 221, 269-270; 380 NW2d 11 (1985). In reviewing sufficiency of the evidence arguments, "[c]onflicting evidence and disputed facts are to be resolved by the trier of fact." *Miller*, 326 Mich App at 735. "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (citation and quotation marks omitted).

## B. ARMED ROBBERY

Neal argues that the prosecution presented insufficient evidence to find her guilty of armed robbery under an aiding and abetting theory. We disagree.

To convict a defendant of armed robbery under MCL 750.529, it is necessary to establish the following:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (citation and quotation marks omitted).]

Under MCL 767.39, a person who aids and abets a crime, may be "prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Generally, to convict a defendant of aiding and abetting a crime, it is necessary to establish that "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (citation and quotation marks omitted). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (citation and quotation marks omitted). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*. (citation and quotation marks omitted).

Neal concedes that the inception and planning of a robbery was her idea. Neal does not dispute that there was sufficient evidence to find that Ford committed an armed robbery. Further, there is no dispute that Neal physically took the sunglasses from the victim's person. Neal contends, however, that she did not know that Ford had a gun at the time she stole the victim's sunglasses. Thus, she argues that she could not have aided and abetted the armed robbery without knowledge that Ford had a weapon.

At bottom, Neal's argument is that a factfinder was required to accept her testimony that she did not know that Ford would bring and use a gun. That turns the standard of review on its head; rather than viewing the evidence in the light most favorable to the prosecution, as we are required to do, Neal would have us view the evidence in the light most favorable to her, which we may not do.

> Of course, appellate courts are not juries, and even when reviewing the sufficiency of the evidence they must not interfere with the jury's role:

> "[An appellate court] must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact . . . . Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony."
>
> [*People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992) (citation omitted; alteration in original).]

"Indisputably, 'a jury may disbelieve the most positive evidence, even when it stands uncontradicted.' " *People v Cain*, 238 Mich App 95, 118; 605 NW2d 28 (1999) (citation omitted).

The prosecution presented sufficient evidence to find that Neal aided and abetted the armed robbery. The defendants planned a violent robbery, seizing property from the victim's person. Neal went to the Store three times on the day of the shooting, each time driven by Ford. Prior to returning to the Store for the second time, Neal and Ford had already spent time together planning the robbery. They knew the victim was a store employee, and they knew he worked at the front door greeting customers; his job also involved loss prevention, and it would have been reasonable to infer that an employee who worked at the door was involved in preventing thefts from the store, and thus might well be more likely to resist a robbery than would a random victim of a robbery. Neal knew, because she planned the robbery, that Ford was to "watch [her] back, and protect her from [the victim]." The surveillance video depicts Neal running from the victim after taking his glasses, turning the corner into the alley and moving around Ford right before he shot the victim, which supports the trial court's conclusion that Neal seemed to expect that Ford had a gun, as she quickly moved around him after turning the corner. And of course, Neal concedes, as she must, that Ford actually was armed with a gun, and in fact shot the victim. After the shooting, Neal fled the scene with Ford and did not contact the police. Further, Neal and Ford were also closely associated as that they were in a relationship, lived together, and had a child together. It is certainly permissible for a factfinder to conclude, given all of that, that Neal knew that Ford was going to bring a gun to the robbery; thus, the trial court's well-reasoned rejection of Neal's testimony, finding her incredible, is quite reasonable, particularly given our deferential standard of review. See also MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.").

## C. FELONY-FIREARM

Neal also argues that there was insufficient evidence to convict her of felony-firearm under an aiding and abetting theory. We disagree.

To convict a defendant of felony-firearm, it must be established that "the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016). To convict a defendant of felony-firearm under an aiding and abetting theory, the prosecutor must prove:

[A] violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*Moore*, 470 Mich at 70-71.]

"In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id*. at 71. "It must be determined on a case-by-case basis whether the defendant performed acts or gave encouragement that assisted in the carrying or possession of a firearm during the commission of a felony." *Id*. (citations and quotation marks omitted).

Because both armed robbery and felony-firearm require the possession of a firearm, the reasons supporting Neal's conviction for armed robbery, as addressed previously, also support the finding that Neal aided and abetted the felony-firearm offense. Thus, the prosecution presented sufficient evidence for the trial court to find Neal guilty of felony-firearm under a theory of aiding and abetting.

IV. CONCLUSION

In Docket No. 351693, Ford was not prejudiced by a joint trial, with separate factfinders; the trial court thus properly denied his motion for severance. In Docket No. 351576 there was sufficient evidence to support Neal's convictions of aiding and abetting both armed robbery and felony firearms. Consequently, we affirm the convictions and sentences of each defendant.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michelle M. Rick

-9-